212 N.J. Super. 249 (1986)
514 A.2d 864
NONA MCCARTHY, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF JOHN P. MCCARTHY AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS AT LAW OF JOHN P. MCCARTHY, DECEASED; PLAINTIFF,
v.
HENRY EHRENS, SEALED UNIT PARTS COMPANY, ANDREW I. CRAWFORD, JAGUAR, ROVER TRIUMPH, INC. AND JOHN DOE (NAME BEING FICTITIOUS AND UNKNOWN), DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided June 6, 1986.
*251 Carl Greenberg for plaintiffs (Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; Carl Greenberg and Kathleen M. Reilly on the brief).
Michael A. Sicola for defendants Andrew I. Crawford and Jaguar, Rover Triumph, Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Richard E. Arvidson of counsel; Michael A. Sicola on the brief).
Andrew Carlowitz for defendants Henry Ehrens and Sealed Unit Parts Company (Hoagland, Longo, Oropollo & Moran, attorneys).
VILLANUEVA, J.S.C.
The issue is whether a driver loses the immunity of the fireman's rule when a policeman, who was dispatched to investigate the drunk driver stalled on the highway, is injured by another motorist during the policeman's chase of the drunk driver.
This lawsuit arose out of a series of events, which began with a radio dispatch to troopers (including plaintiff's decedent) regarding a drunk driver stopped at a toll booth on the New Jersey Turnpike.
As the troopers approached the toll booth, defendant Crawford (driving a Jaguar) fled the scene. Although the troopers gave chase, Crawford refused to stop and ultimately crashed into the center guardrail of the turnpike. Trooper McCarthy ran across three lanes of the turnpike in order to render assistance to the Jaguar operator. He then returned to the troop car, advised what was needed and stated that he would arrest the driver of the Jaguar while Trooper McClain flared the area. As Trooper McCarthy was again crossing the highway, Ehrens' vehicle struck him, resulting in his death.

*252 Nature of This Motion for Summary Judgment.

Defendants, Andrew Crawford and Jaguar, Rover Triumph, Inc., move for summary judgment alleging that plaintiff has failed to state a claim upon which relief can be granted and that the fireman's rule bars plaintiff from asserting a claim based on Crawford's negligence. Defendants contend that there was only a single act of negligent operation of a motor vehicle, to wit, driving under the influence of alcohol, which began when Crawford started driving home that evening. They also contend that plaintiff's decedent was injured while investigating the very occurrence which occasioned his presence at the scene.
Plaintiff contends that the fireman's rule does not apply because (1) Crawford[1] committed subsequent acts of misconduct which proximately caused Trooper McCarthy's death; (2) the act of drunk driving, an inherently dangerous activity, should be an exception to the fireman's rule; and (3) this defendant's conduct, in being so drunk while driving, constituted wanton and willful misconduct, which is an exception to the fireman's rule.
The court concludes that the subsequent conduct of Crawford after the troopers were dispatched to his car as well as such wanton and willful conduct (if proved) are both exceptions to the fireman's rule.

Statement of Facts.
This law suit was instituted by plaintiff, Nona McCarthy, as administratrix and as the administratrix ad prosequendum for the estate of John P. McCarthy, as a result of the wrongful death of Trooper McCarthy. On September 24, 1982, Trooper McCarthy and Trooper Lawrence McClain were summoned to the New Jersey State Turnpike by a radio call concerning a *253 drunk driver (defendant, Andrew Crawford), whose car was stopped at the toll booths at interchange 18W. Trooper McClain was driving a state police vehicle in which his partner Trooper McCarthy was a passenger. As the troopers approached northbound exit 18W, their intended destination, they saw a Jaguar (leased by defendant Crawford from Jaguar, Rover Triumph, Inc.) with two flat tires traveling on the right hand shoulder of the southbound lane. Furthermore, despite the fact that it was approaching midnight, the car had no headlights on. When the troopers reached their intended destination, they were forced to alter their plans and pursue Crawford's vehicle since it had left the interchange and was proceeding south. They made a U-turn and pulled up alongside his vehicle which was still moving erratically on the right-hand shoulder going southbound on the turnpike. With their over-head lights flashing, they spoke to the operator through their loudspeaker system in an attempt to stop his car from traveling further.
Trooper McClain was driving the troop car on the right shoulder while they attempted to stop Crawford's vehicle. Suddenly and without any warning, Crawford traveled across three lanes of the turnpike ultimately crashing into the center guardrail on the inside lane of the turnpike. Since the police vehicle was parallel to the Crawford vehicle, but on the opposite shoulder of the turnpike, the troopers left their car on the right shoulder while investigating Crawford's accident at the guardrail on the left shoulder. The police vehicle had been directly behind Crawford's vehicle when it was on the right shoulder until Crawford suddenly and without warning moved his vehicle to the opposite side of the highway. Trooper McClain did not move the troop car across the turnpike due to the hazard involved in backing up on the turnpike and having to cross three lanes to reach the Jaguar.
Trooper McCarthy crossed the three lanes of the turnpike on foot, found that defendant Crawford was drunk and then returned to the troop car to explain the situation to Trooper *254 McClain and request a tow truck to take the Jaguar to the police station.
While crossing the turnpike again on foot to return to the Jaguar, Trooper McCarthy was struck by a vehicle operated by defendant, Henry Ehrens, which was owned by defendant, Sealed Unit Parts Company.[2]
Trooper McCarthy was pronounced dead on arrival at the hospital.

History of the "Fireman's Rule."
The fireman's rule was first established by the New Jersey Supreme Court in Krauth v. Geller, 31 N.J. 270 (1960). In Krauth, the Court barred a suit brought by a fireman against a landowner for injuries sustained in responding to and in fighting a fire on the landowner's premises. The Supreme Court held that a fireman may not recover from an owner or occupier of land for negligence with respect to the creation of the fire on that property. Id. at 273.
In Berko v. Freda, 93 N.J. 81 (1983), the Supreme Court extended the fireman's rule by applying it to police officers. In Berko, plaintiff-police officer brought suit against a car owner, who negligently left his keys in his car, for injuries inflicted by a thief who stole the car. The Supreme Court affirmed summary judgment granted to defendant-car owner on the basis of the fireman's rule, but the Court noted that nothing in the fireman's rule prevents the officer from suing the thief.
The rule bars suit for an act of ordinary negligence which creates the occasion for the presence of a firefighter or a police officer at the place where he is injured. Although the fireman's rule has been extended to apply to police officers, the name of the rule has never been changed.
*255 There has long been a distinction between the negligence which brings a firefighter or a policeman to the scene and subsequent acts of misconduct which injure him. Wietecha v. Peoronard, 102 N.J. 591, 593 (1986); Entwistle v. Draves, 194 N.J. Super. 571, 575 (Law Div. 1984), aff'd. 200 N.J. Super. 1 (App.Div. 1985), aff'd. 102 N.J. 559 (1986).
In Entwistle, supra, three police officers were injured when they responded to a call for help from defendant's tavern. They sued the tavern owner and property owner, alleging careless, reckless and negligent failure to prevent both the disturbance and the nuisance. The trial court held that "the grade of negligence was immaterial" as long as "defendant's act created a condition or hazard with which policemen are employed to cope." 194 N.J. Super. at 576. The trial court noted that additional and subsequent acts of negligence which directly caused the officers' injuries can be the basis of recovery, citing Trainor v. Santana, 86 N.J. 403, 407 (1981). After an affirmance by the Appellate Division, the Supreme Court also affirmed the dismissal of the complaint, but held that recovery for injuries occasioned by wanton and willful misconduct is not barred by the fireman's rule.
The core of the fireman's rule is that a citizen's ordinary negligence that occasioned the presence of the public safety officer shall not give rise to liability in damages for the injuries sustained by the officer in the course of the response to duty. Mahoney v. Carus Chem. Co., 102 N.J. 564, 571, 573 (1986).
The corollary of the rule is that independent and intervening negligent acts that injure the safety officer on duty are not insulated. Wietecha v. Peoronard, supra, 102 N.J. at 593. In that case, plaintiffs did not allege that their presence at the scene of hazard was occasioned by willful and wanton misconduct on the part of the vehicle operators. Hence, their challenge was to the fundamental premise that underlies the rule in its ordinary application. The Supreme Court held that the purposes of the fireman's rule are met by drawing lines between *256 negligent conduct and willful and wanton misconduct. Wietecha involved a complex factual situation where the rule was applied to the police officer who arrived at the scene to investigate an accident, but not to the officer who came to the scene to investigate a second accident which occurred when the patrol car of the first officer was struck in the rear at the scene.
In Trainor v. Santana, supra, where an injured policeman sued a motorist for injuries sustained as a result of the latter's negligent operation of his vehicle, the Court did not apply the fireman's rule to police because the injuries were caused by additional and subsequent acts of negligence by the defendant, not negligence which created the occasion of the officer's presence. The Court stated:
If extended to policemen, the rule would preclude recovery by a police officer only for acts of ordinary negligence which create the occasion for a police officer's presence at the place where he is injured. It could not be asserted as a defense where, as here, after the police officer arrived at the scene and the defendant was aware of his presence, the defendant committed additional and subsequent acts of negligence which directly caused the officer's injuries. [86 N.J. at 407]

Since Crawford's conduct in leaving the scene where the troopers were dispatched and eluding the pursuing troopers were additional and subsequent acts, the "fireman's rule" does not bar this action.
Crawford did not summon the state police. He was not seeking either the protection or the assistance of the police. The troopers were summoned by a turnpike authority employee seeking assistance because of a drunken driver stopped at a toll plaza. When they reached their destination and learned that Crawford had pulled away from the interchange, they pursued him south on the turnpike. From that place and from that time, the troopers were in pursuit of a drunk driver operating his motor vehicle in a dangerous and erratic fashion. Defendant Crawford ingested liquor and willfully and wantonly operated his motor vehicle in violation of state law. Therefore, *257 plaintiff's decedent was not killed as a result of the function he was initially called to perform, i.e., investigate a drunk driver stopped at the toll plaza. Instead, plaintiff's decedent was killed because of his duty as a police officer to pursue a drunk driver who would not yield to a trooper's flashing lights and warnings, ultimately crashing into the center guardrail of a highway.
The troopers continued past their original destination, the interchange at exit 18W, and drove on the right-hand shoulder alongside Crawford's vehicle, which was being operated with two flat tires. The troopers had their flashing lights on and spoke to Crawford over the loudspeaker advising him of their presence and requesting him to pull over and stop. Crawford did not heed the direction, but instead he suddenly, unexpectedly and without warning traveled from the right-hand shoulder of the turnpike across three lanes of traffic and crashed into the center guardrail of the turnpike. The troopers, who had pulled over in order to arrest Crawford while he was on the right side of the road, were now forced to go across the turnpike to arrest him.
Crawford's act in leaving the original location to which the troopers were summoned constituted a subsequent act of negligence or wanton or willful misconduct which bars application of the fireman's rule in this case. In addition, Crawford's conduct, in failing to heed the troopers' instructions by moving his vehicle from the right shoulder to the far left side of the roadway even after he was aware of the trooper's presence, constituted an additional, subsequent act of misconduct proximately causing the decedent's injuries and resulting death.
After a police officer is dispatched to a particular location, a driver cannot create another or additional risk which takes the police officer away from the scene without losing the immunity of the fireman's rule.
*258 Therefore, Crawford committed at least two subsequent acts of wrongful conduct which preclude applicability of the fireman's rule in this case.
It was not, as Crawford contends, a single act of negligence (driving a motor vehicle under the influence of alcohol), which began when he started driving home that evening.
Another reason why Crawford should not receive the benefit of the fireman's rule is best set forth by the attorneys for the defendant Ehrens:
It would be a grave injustice to dismiss the plaintiff's complaint against one whose egregious conduct was one of the causes of the accident at issue. Viewing this case analytically, it should be noted that the police officers, including the plaintiff's decedent, who were going to the scene of the reported incident or accident, were there to protect the State and its citizenry from Crawford as opposed to going to the scene for the benefit of Crawford.
But for Crawford's continuous misconduct, Ehrens would never have struck and killed Trooper McCarthy.

Plaintiff's contention that the act of drunk driving, an inherently dangerous activity, should be an exception to the "fireman's rule."
Crawford was severely intoxicated[3] while operating his automobile on the turnpike.
There is very strong public policy against drunk drivers, as our Legislature and courts have taken a very strong stand against such conduct. On that basis, this court is asked to find an exception to the fireman's rule when the act of drunk *259 driving is involved since it is such an inherently dangerous activity and a matter of public policy to deter drunk drivers from endangering the lives of others.
Plaintiff contends that drunk drivers should not receive the benefits accorded the rest of society of being immunized from suit for injuries sustained by a police officer while the officer attempted to remove such a drunk person from the highway, particularly when the driver took action to elude the police officer.
It is not the function of a trial court to create an exception to an established rule of law; that is the function of either the Supreme Court or the Legislature. While the trial court need not necessarily agree with the appellate tribunals, it may not disregard them. Lewandowski v. Nat'l Grange Mutual Ins. Co., 149 N.J. Super. 591 (Law Div. 1977). Even the decisions of an intermediate appellate court are the law of this state until reversed or overruled by the court of last resort. State v. Rembert, 156 N.J. Super. 203 (App.Div. 1978). It is the responsibility of all judges not to depart from pronouncements of superior appellate courts. State v. Smith, 169 N.J. Super. 98 (App.Div. 1979), rev'd on other grounds 85 N.J. 193 (1981).
Therefore, this court cannot create an exception to a rule established by the Supreme Court.

A jury could reasonably conclude that Crawford's conduct constituted willful and wanton misconduct and, therefore, plaintiff's lawsuit is not barred by the "fireman's rule."
The Supreme Court has held that a recovery for injuries occasioned by wanton and willful misconduct is not barred by the fireman's rule. Entwistle v. Draves, supra; Mahoney v. Carus Chem. Co., supra, 102 N.J. at 578, which held that the immunity of the fireman's rule does not extend to one whose willful and wanton misconduct created the hazard that caused injury to the fireman or policeman.
*260 The Supreme Court in Krauth v. Geller, supra, considered, but did not decide, whether the bar of the fireman's rule would immunize from liability one whose conduct was more culpable than ordinary negligence. The opinion implies that an arsonist or one who reports a false alarm would not enjoy immunity: "We are not concerned with the liability to a fireman of an arsonist or one who deliberately induces a false alarm." Id., 31 N.J. at 277. The opinion appears to acknowledge that the policy considerations underlying the rule could not justify an immunity which would protect the intentional wrongdoer.
Decedent was not called to the scene by Crawford, as might be the case where the fire department is called by an owner or where a police department is called by a tavern owner to quell a disturbance. This case involves the wrongdoer, not the person subjected to the catastrophe nor the harm which may occur from another's criminal acts. In this instance, it is the wrongdoer himself seeking immunity from liability. Under such circumstances, defendant is a stranger to plaintiff's presence on the scene. He is, to a lesser degree, in the position of the thief (as in Berko v. Freda, supra). As long as his conduct is willful and wanton, he has no immunity. The public policy underlying the fireman's rule would not be served in this instance. The wrongdoer herein should not be immunized by a rule which was adopted to protect innocent persons, not willful and wanton wrongdoers.
When the hazard confronted by the policeman or fireman is created "not by ordinary negligence but by conduct decidedly more culpable  either intentional acts, or willful and wanton misconduct  the public policy balance that supports immunity in the case of ordinary negligence has been fundamentally altered. The risk may be the same but the conduct causing the risk is extraordinarily culpable. In such cases, as a matter of fairness, deterrence and sound public policy, the burden sought to be avoided by the fireman's rule for the ordinary citizen who commits ordinary negligence should be visited upon the extraordinary *261 wrongdoer." Mahoney v. Carus Chem. Co., supra, 102 N.J. at 576.
The Supreme Court has consistently recognized the importance of the distinction between willful and wanton conduct and ordinary negligence. See, e.g., Foldi v. Jeffries, 93 N.J. 533, 549 (1983).
"For an act to constitute willful and wanton misconduct, the act must be intended, but not the resulting harm; the actor need only realize[] ... that there is a strong probability that harm may result." Restatement, Torts 2d, § 500(f); see also Berg v. Reaction Motors Div., 37 N.J. 396, 413-414 (1962). Mahoney v. Carus Chem. Co., supra, 102 N.J. at 573 (slip opinion at 13).
Willful and wanton conduct has been expressed in these terms:
[I]t must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. [McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)].
Such conduct, if proved, clearly indicates that Crawford possessed the requisite knowledge of the serious consequences that could result when one drives while intoxicated, the consciousness that injury was likely to result from his conduct, and the reckless indifference to injurious consequences that characterize the recognition of willful and wanton misconduct as a separate basis for liability. Mahoney v. Carus Chem. Co., supra, 102 N.J. at 578; McLaughlin v. Rova Farms, Inc., supra.
Plaintiff's preliminary proofs,[4] enhanced by the favorable inferences to which she is entitled on a motion for summary *262 judgment, Viviano v. C.B.S., Inc., 101 N.J. 538, 542 (1986), justify the conclusion that Crawford acted with reckless indifference to the consequences of his conduct and amply support a cause of action based upon willful and wanton misconduct.
Motion for summary judgment denied.
NOTES
[1] Although Jaguar, Rover Triumph, Inc., which leased the car to Crawford, was joined as a defendant, reference will be made only to Crawford for ease of analysis.
[2] The court today granted leave to Ehrens and Sealed Unit Parts Co., to file a third-party complaint for negligence against the restaurant that allegedly served liquor to Crawford before the incident.
[3] He testified at his disposition that he did not remember leaving the restaurant where he had been drinking and did not remember driving on the turnpike nor anything about the accident. The police report indicates that he was grasping for support, staggering, was incoherent with slurred speech, had eyes that were bloodshot and watery with droopy lids, was whining, crying, being antagonistic and threatening. Furthermore, he had vomited on and urinated in his clothes and had odor of alcohol on his breath. His blood alcohol reading was 0.182%. As a result thereof, he pled guilty to a charge of driving while intoxicated.
[4] Plaintiff has not moved to amend her complaint which alleges "negligence," to include a cause of action for willful and wanton misconduct. The only facts alleged in the complaint against Crawford are that Trooper McCarthy was summoned to investigate a report regarding a drunk driver at exit 18W, where Crawford, while intoxicated, was operating a Jaguar with two blown out tires, in an erratic fashion. The complaint further alleges that as a result of his intoxicated condition, Crawford brought his vehicle to a stop when it collided with a center guard rail.