583 A.2d 1129

JOSE ROSA AND MARIE ROSA, HIS WIFE, PLAINTIFFS–APPELLANTS, v. DUNKIN' DONUTS OF PASSAIC AND CARMEL ADITYA, A/K/A CARMEL ADITRIA, DEFENDANTS–RESPONDENTS, AND JOSEPH TAVARES, ABC CORPORATION, AND JOHN DOE (FICTITIOUS NAMES REPRESENTING THE OWNERS AND/OR OPERATORS OF DUNKIN' DONUTS, PASSAIC, NEW JERSEY), DEFENDANTS.

Argued September 10, 1990—Decided January 15, 1991.

*Barry Fredson* argued the cause for appellants (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys).

*Carl A. Perrone* argued the cause for respondents (*Paul Seligman,* attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

In *Krauth v. Geller,* 31 *N.J.* 270, 273, 157 *A.*2d 129 (1960), we adopted the fireman's rule that "the owner or occupier is not liable to a paid fireman for negligence with respect to the creation of a fire." *Id.* at 273, 157 *A.*2d 129. In *Berko v. Freda,* 93 *N.J.* 81, 459 *A.*2d 663 (1983), we extended the rule to police officers.

This appeal concerns the scope of the immunity granted by the fireman's rule. No act of negligence brought plaintiff, a police officer, to the scene of his injury. In response to an emergency medical assistance call from the defendants' store, he slipped on a powdery white substance scattered on the kitchen floor of the store. He claims that the fireman's rule bars a suit against the property owner or occupier only "for an act of ordinary negligence that creates the occasion for the presence of a firefighter or a police officer at the place where he is injured." *Berko v. Freda, supra,* 93 *N.J.* at 84, 459 *A.*2d 663. Defendants claim that the fireman's rule also bars a suit against a property owner or occupier for an act of ordinary negligence that arises out of the normal course of a police officer's duty. The issue, therefore, is: does the fireman's rule

bar liability only where the injuries arise from an ordinary act of negligence that is the reason for the firefighter or police officer being on the premises, or does it likewise bar liability where the injuries arise from an ordinary act of negligence that firefighters and police in the normal course of their duties should expect to meet?

## I

The facts are essentially undisputed. While on duty, plaintiff, Jose Rosa, a police officer in Passaic, responded to a call for emergency medical assistance for a sick employee at defendants' Dunkin' Donuts store in Passaic. On arriving at the store Officer Rosa found an unconscious employee. While he was carrying the unconscious employee on a stretcher to the police ambulance, Officer Rosa's left foot slipped on a white powdery substance (presumably confectioner's sugar or flour) on the kitchen floor of the donut shop. Officer Rosa recalls no conscious recognition of the powder's presence before his fall; however, there is no indication or insinuation that it was not present when he arrived at the scene.

Officer Rosa received unspecified injuries as a result of slipping while transporting the sick employee to the ambulance. His injuries form the basis of a workers' compensation claim. His injuries also form the basis of this lawsuit.

On July 21, 1984, Officer Rosa filed a lawsuit based on these unspecified injuries against defendants' Dunkin' Donuts of Passaic and Carmel Aditya, the owner of the franchise.[1] He alleged that the defendants had caused him to slip and fall by negligently allowing the white powdery substance to remain scattered on the kitchen floor, thereby creating a slippery floor. He contended that the white powdery substance on the floor

---

[1] Rosa's wife is also a plaintiff in this action but her actions are strictly derivative. "Plaintiff" as used herein refers only to Officer Rosa.

created a foreseeable risk of avoidable future harm. His contention forms a classic, ordinary negligence claim.

On November 3, 1987, defendants moved for summary judgment, claiming that the fireman's rule barred plaintiff's action. Although many statements of that rule apparently limit it to barring claims based upon the very negligence that occasioned the rescuer's presence, *see Berko v. Freda, supra,* 93 *N.J.* at 85, 459 *A.*2d 663; *Krauth v. Geller, supra,* 31 *N.J.* at 273, 157 *A.*2d 129; *Cella v. Interstate Properties,* 232 *N.J.Super.* 232, 240, 556 *A.*2d 1262 (App.Div.1989); *Chipps v. Newmarket Condominium Ass'n,* 228 *N.J.Super.* 144, 147, 549 *A.*2d 66 (Law Div.1988), defendants cite recent cases that held it applicable to situations in which the officer's presence was occasioned by some factor other than the negligence that caused his or her injury. *Maryland Casualty Co. v. Heiot,* 224 *N.J.Super.* 441, 446, 540 *A.*2d 920 (Law Div.1988); *Williams v. Levitt,* 213 *N.J.Super.* 604, 607, 517 *A.*2d 1242 (Law Div.1986).

The trial court granted defendants' motion. Officer Rosa appealed. The Appellate Division unanimously rejected Officer Rosa's contention that his claim fell into a standard exception to the fireman's rule.

> [The plaintiffs] urge that the injury sustained here falls squarely within the exception carved out in *Berko* for negligence which did not create the occasion for the public employee's presence. *Berko, supra,* 93 *N.J.* at 85 [459 *A.*2d 663]. In other words they view the slip and fall as entirely distinct from the reason for Rosa's presence at defendant's premises. We disagree. In our view Rosa's fall was a risk inherent in the situation to which he responded (a rescue in the kitchen of a doughnut shop) and recovery was therein precluded under the "Fireman Rule."

We granted certification, 117 *N.J.* 626, 569 *A.*2d 1330 (1989), and now affirm.

II

The fireman's rule is followed throughout the country. *Berko v. Freda, supra,* 93 *N.J.* at 83, 459 *A.*2d 663. Since this Court adopted the rule in 1960, it has been "a fixture in our jurisprudence." *Ibid.*

In adopting the rule, we eschewed the technical formalistic classifications used to define varying duties of care landowners owe to trespassers, licensees, or invitees. We recognized that the officer's "status being *sui generis,* justice is not aided by appending an inappropriate label and then visiting consequences which flow from a status artificially imputed." *Krauth v. Geller, supra,* 31 *N.J.* at 273, 157 *A.*2d 129.

In *Krauth,* Chief Justice Weintraub set forth the policy underlying the fireman's rule:

The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk" used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.

[31 *N.J.* at 273–74, 157 *A.*2d 129 (citations omitted).]

We continue to recognize the fundamental fairness of the *Krauth* public-policy rationale that supports the fireman's rule. In *Berko v. Freda, supra,* we held that the rule barred a police officer's suit against a car owner who negligently left keys in his car for the injuries inflicted on the officer by the youth who stole the car. In *Berko,* we stated:

We perceive more than mere dollars-and-cents considerations underpinning the fundamental justice of the "fireman's rule." There is at work here a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties. In the absence of a legislative expression of contrary policy, a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly-set

fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct. [*Id.* at 88–89, 459 *A.*2d 663].

In a more recent case, *Mahoney v. Carus Chemical Co.,* 102 *N.J.* 564, 510 *A.*2d 4 (1986), we held that "the immunity of the fireman's rule does not extend to one whose willful and wanton misconduct created the hazard that caused the injury to the fireman or policeman." *Id.* at 579, 510 *A.*2d 4. Although we narrowed the scope of the rule, we reaffirmed our belief in the underlying policy considerations of the fireman's rule:

Furthermore, considerations of fairness support the grant of immunity from suit by firemen or policemen to a citizen whose conduct is merely negligent. Hazards negligently created are staples of the duties firemen and policemen are expected to perform. Although the citizen immunized is not free from fault, the quality of fault is not so severe that the grant of immunity from liability for injuries sustained by firemen and policemen in the ordinary course of their duties offends our common sense of justice. [*Id.* at 573–74, 510 *A.*2d 4].

The policies underlying the fireman's rule are simple, straightforward ones. The accidents and emergencies occasioning the presence of firefighters and police officers are a sad fact of life not soon to be eliminated. *Berko, supra,* 93 *N.J.* at 86, 459 *A.*2d 663. They are, however, also the very reason for the existence of the public forces of the "finest" and the "bravest." "Both are paid to confront crises and allay dangers created by an uncircumspect citizenry. . . . Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition. . . ." *Id.* at 86–87, 459 *A.*2d 663. A taxpayer who pays the fire and police departments to confront the risks should not have to pay again. *Id.* at 87–88, 459 *A.*2d 663.

More significant, however, is the realization that the very nature of the profession that the officers have chosen embodies risks that the emergencies to which they will respond will neither be conveniently timed nor situated for rescuer, victim, or property-owner—they have assumed (and been trained to handle) those risks. *Berko v. Freda, supra,* 93 *N.J.* at 88, 459 *A.*2d 663; *Krauth v. Geller, supra,* 31 *N.J.* at 274, 157 *A.*2d

129.  Those professionals, whether firefighters or police officers, are charged with responding to a situation and effecting a rescue.  They must measure the "situation" in the totality of the circumstances present at the scene.

[A] police officer does not have time to draw up a contract with the owner of a stolen car outlining the risks of pursuing the thieves, but the very nature of police work requires officers to recognize the dangers inherent in such emergencies.  *N.J.S.A.* 52:17B–68 mandates police training courses for this very reason.  Indeed, one who does not know the risks inherent in a high speed chase should not engage in high speed chasing.  [*Berko v. Freda, supra,* 93 *N.J.* at 88, 459 *A.*2d 663].

It contravenes good sense and good policy to hold property owners liable to prepare for such unexpected arrivals.

Ordinarily a firefighter or police officer is summoned in circumstances of emergency where the landowner has not had time to prepare the premises for his arrival. . . .  A firefighter responding to such an emergency call has no reasonable expectation that the property has been made safe for his arrival.  One engaged in this occupation does not determine whether to respond based on weather conditions.  This is because a firefighter is likely to enter at unforeseeable times under emergent circumstances.  In other words weather is one of the "inherent risks of (this) calling."  *Cf. Krauth, supra,* 31 *N.J.* at 274 [157 *A.*2d 129].

[*Maryland Casualty Co. v. Heiot, supra,* 224 *N.J.Super.* at 444–45, 540 *A.*2d 920.]

*See also Williams v. Levitt, supra,* 213 *N.J.Super.* at 604, 517 *A.*2d 1242 (stating that were it otherwise, any citizen seeking aid of the police may be expected to ensure that no condition even remotely giving rise to liability exists before he calls upon them to render assistance).  The noted commentator Dean Prosser stated:

the most legitimate basis for [the firemen's rule] lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency where care in looking after the premises and in preparation for the visit, cannot reasonably be looked for.

[W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts,* § 61 at 431 (5th ed. 1984)].

■  We agree.  Firefighters and police officers must be held to assume the risks that are to be expected in encountering the hazards and risks of their job.  They are risks inherent and incidental to the performance of the duties of a firefighter and

police officer. Such risks properly include an ordinary act of negligence that an officer may encounter at the scene of the incident. To hold otherwise creates artificial distinctions between the negligence that occasioned one's presence and the negligence defining the scene at which one arrives (and with which one has been commissioned and empowered to deal). Such distinctions serve neither the rationale underlying the public-policy considerations for the fireman's rule nor the assumption of risk.

■ The policy rationale underlying the fireman's rule fully supports its application in this case. The conditions and responsibilities that Officer Rosa faced when he entered Dunkin' Donuts were those of a type inherent in the performance of his duties. Officer Rosa entered the kitchen to render medical assistance to an unconscious female employee. He is paid, trained, and expected to confront such emergencies and to remove those in peril.

His duty compelled him to traverse the area sprinkled with powder. He could not have fulfilled his duty without passing over the area in question. *Hill v. Adler's Food Town,* 180 *Mich.App.* 495, 497–500, 447 *N.W.*2d 797, 799 (1989) (barring suit because officer's duty to respond made using defective staircase unavoidable). In carrying out that duty, the plaintiff must take the premises as he found them. Indeed, the unconscious woman could herself have knocked over the powder while falling. The intervening medical emergency could have disrupted normal cleaning procedures. Such conditions define one's role as a paid protector of the public. "Poor housekeeping is a hazard inherent or inevitable in firefighting," *Jackson v. Velveray Corp.,* 82 *N.J.Super.* 469, 480, 198 *A.*2d 115 (App. Div.1964), or police work, whether it compounds the difficulty of extinguishing the flames or extricating the fallen.

The application of the fireman's rule in this case does not occasion a wide extension of its scope. We have consistently applied the immunity granted under the fireman's rule to those

guilty of previous ordinary negligence. "[C]onsiderations of fairness support the grant of immunity from suit by a fireman or policeman to a citizen whose conduct is merely negligent. Hazards negligently created are staples of the duties firemen and policemen are expected to perform." *Mahoney v. Carus Chem. Co., supra,* 102 *N.J.* at 573, 510 *A.*2d 4. The public policy that opposes exposing citizens to liability for mere acts of ordinary negligence applies equally well whether it be a police officer or firefighters performing his or her "necessary, albeit hazardous, public duties." *Berko, supra,* 93 *N.J.* at 91, 459 *A.*2d 663.

■ The fireman's rule still allows recovery in situations of willful or intentional misconduct traditionally outside of the cloak of the rule's immunity. As we stated clearly in *Mahoney v. Carus Chemical Co., supra,* 102 *N.J.* at 576, 510 *A.*2d 4, willful and wanton misconduct is an appropriate exception to most general rules of immunity. In the case of the fireman's rule it is perhaps most appropriate because according "immunity to one who deliberately and maliciously creates the hazard that injures the firemen or policemen stretches the policy underlying the fireman's rule beyond the logic and justifiable limits of its principle." *Id.* at 574, 510 *A.*2d 4. By contrast, today's decision is well within the limits of that principle.

Likewise, we continue to adhere to our statement in *Berko v. Freda* that the rule does not apply when a defendant's clearly "subsequent act of negligence" injures the police officer or firefighter. 93 *N.J.* at 91, 459 *A.*2d 663. As we noted there, defining those acts presents a "subtler problem" than allowing suit where one is guilty of wanton, willful or intentional behavior. *Ibid.* It is a problem we have confronted in the past, *see Wietecha v. Peoronard,* 102 *N.J.* 591, 596, 510 *A.*2d 19 (1986), but which we need not confront today. We need only recognize that there may be cases in which acts of negligence that occur subsequent to an officer's arrival on the scene pose hazards so closely connected to the purpose of the officer's presence that

they may fairly be described as incidental to and inherent in the performance of the officer's duties. We understand that the closeness of the connection may prevent one from sensibly or fairly describing these as *"independent* and intervening negligent acts." *Id.* at 595, 510 *A.*2d 19 (emphasis added). However, we need not speculate further to resolve this case in the context in which such acts of negligence may arise, but acknowledge the possibility that there may be subsequent acts of negligence entitled to the immunity afforded by the fireman's rule.

■ Of course, the fireman's rule only applies to bar suit by a police officer or firefighter injured in the performance of his or her duty. It does not apply when the officer is acting as a normal citizen. For example, had Officer Rosa entered the premises to purchase coffee or a doughnut, he would be a customer, albeit a uniformed one. If he were injured while on the premises making such a purchase, the fireman's rule would not prohibit his recovery against the property owner. Nothing in the public-policy or assumption-of-risk arguments underlying this rule imply that officers should not receive the protections afforded civilian patrons when acting as customers themselves.

■ In conclusion, we find that the policies and goals that bar a firefighter and police officer from recovering for injuries sustained from an ordinary act of negligence that occasioned the officer's presence on the premises are equally applicable to bar liability for injuries that arise from an act of ordinary negligence posing a hazard that is incidental to and inherent in the performance of the officer's duties. Such a rule would bar recovery to an injured firefighter who slipped on icy steps while responding to an emergency medical call from the owner of the premises (*Maryland Casualty Co. v. Heiot, supra,* 224 *N.J.Super.* at 441, 540 *A.*2d 920); to an injured police officer who slipped into a hole in the owner's yard while investigating a burglar alarm at the home (*Williams v. Levitt, supra,* 213

*N.J.Super.* at 604, 517 *A.*2d 1242); to an injured police officer who, while checking the rear doors of a building, fell down a stairway because the handrail was too wide (*contra Chipps v. Newmarket, supra,* 228 *N.J.Super.* at 144, 549 *A.*2d 66); to a police officer who was injured when he fell on ice in the early morning hours while investigating the presence of a suspicious car in the shopping center's parking lot (*contra Cella v. Interstate Properties, supra,* 232 *N.J.Super.* at 232, 556 *A.*2d 1262). All those injuries arose out of the officer's normal performance of his duties. The relationship among the injuries, their causes, and the officers' duties is neither attenuated nor artificial. The officers in those cases came to the scene to inspect the area or to carry out the injured. Their injuries arose out of their inspections or out of passing over the very area providing access to and exit for the injured person.

Similarly, when a police officer responds to a medical emergency, he or she must anticipate attending to the victim, removing the victim from the present location, and facilitating the victim's transportation to the hospital. Lifting a stretcher under less-than-ideal conditions is not unfathomable. Indeed, it is so likely as to be considered an inherent part of the performance of the officer's rescue duty.

Accordingly, the judgment of the Appellate Division is affirmed.

HANDLER, J., filed a separate dissenting opinion.

HANDLER, J., dissenting.

In this case, the Court denies recovery for personal injuries sustained by a police officer as a result of a fall caused by foreign substances on the floor of a commercial establishment. The police officer, coming to the establishment in response to an emergency, is not permitted to sue its negligent owner, even though the owner's negligence in this case had nothing whatsoever to do with the emergency that brought the officer to the premises.

We have heretofore acknowledged such an immunity—the "fireman's rule"—only with respect to injuries arising out of acts of ordinary negligence that cause the emergency that exposes an officer to the risk of harm. *E.g., Berko v. Freda,* 93 *N.J.* 81, 459 *A.*2d 663 (1983); *Krauth v. Geller,* 31 *N.J.* 270, 157 *A.*2d 129 (1960). The immunity has not been applied with respect to acts of negligence that are "independent of" or unrelated to the emergency. Thus, it usually applies only with respect to the negligence of the person who causes the emergency and is owed a duty of care by the officer responding to the emergency. *See Mahoney v. Carus Chem. Co.,* 102 *N.J.* 564, 582–83, 510 *A.*2d 4 (1986). *Compare, e.g., Wietecha v. Peoronard,* 102 *N.J.* 591, 510 *A.*2d 19 (1986) (motorist whose negligence causes emergency immune); *Berko, supra* (car owner whose negligence leads to theft of car immune); and *Krauth, supra* (property owner whose negligence causes fire immune) *with, e.g., Wietecha, supra* (motorist whose negligence did not cause emergency not immune). Moreover, the immunity does not apply to negligence that is willful or wanton, even though it causes the emergency. *Mahoney v. Carus Chem. Co., supra,* 102 *N.J.* 564, 510 *A.*2d 4. In this case, however, the Court does not simply perpetuate the "fireman's rule," it substantially extends the doctrine. The Court has redefined the immunity of the fireman's rule.

The fireman's rule is now made applicable to bar liability for injuries that arise from an act of ordinary negligence if encountering the negligence "is inherent in the performance of the officer's duties," without regard to whether the negligence causes or is related to the emergency. *Ante* at 76, 583 *A.*2d at 1134. The Court's new standard can be contrasted with its explanation of the rule articulated just a few years ago: the fireman's rule "speaks only to the negligence that started the fire." *Berko v. Freda, supra,* 93 *N.J.* at 85, 459 *A.*2d 663 (referring to *Krauth v. Geller, supra,* 31 *N.J.* 270, 157 *A.*2d 129). We stressed in *Mahoney v. Carus Chemical Co., supra,* 102 *N.J.* at 582–83, 510 *A.*2d 4:

Case law draws a distinction between injury stemming from the negligence that brought the firefighter or police to the scene in the first place, and injury suffered from independent causes that follow.

The new definition of immunity now fashioned by the Court, first, eliminates any causal connection between the negligence and the emergency, and, second, makes it applicable only to work-related negligence. It defines work-related negligence as that "inherent in the performance of the officer's duties." *Ante* at 76, 583 *A*.2d at 1134. The Court explains by example what it considers to be such acts of ordinary, work-related negligence. Its new immunity

> would bar recovery to an injured firefighter who slipped on icy steps while responding to an emergency medical call from the owner of the premises (*Maryland Cas. Co. v. Heiot, supra*, 224 *N.J.Super.* at 441 [540 *A*.2d 920]); to an injured police officer who slipped into a hole in owner's yard while investigating a burglar alarm at home (*Williams v. Levitt, supra*, 213 *N.J.Super.* at 604 [517 *A*.2d 1242]); to an injured police officer who, while checking the rear doors of a building, fell down a stairway because the handrail was too wide (*contra Chipps v. Newmarket, supra*, 228 *N.J.Super.* at 144 [549 *A*.2d 66]); to a police officer who was injured when he fell on ice in the early morning hours while investigating the presence of a suspicious car in a shopping center's parking lot (*contra Cella v. Interstate Properties, supra*, 232 *N.J.Super.* at 232 [556 *A*.2d 1262]).
>
> [*Ante* at 76–77, 583 *A*.2d at 1134.]

Referring to those examples of ordinary work-related negligence, the Court explains why its immunity bars recovery for resultant injuries suffered by police officers or firefighters:

> All these injuries arose out of the officer's normal performance of his duties. The relationship among the injuries, their causes and the officers' duties is neither attenuated nor artificial. The officers in these cases came to the scene to inspect the area or to carry out the injured. Their injuries arose out of their inspections or out of passing over the very area providing access to an exit for the injured persons....
>
> [W]hen a police officer responds to a medical emergency, he must anticipate that he will attend to the victim, remove the victim from the present location and facilitate the victim's transportation to the hospital. Lifting a stretcher under less than ideal conditions is not unfathomable. Indeed, it is so likely as to be considered an inherent part of the performance of the officer's rescue duty.
>
> [*Ante* at 77, 583 *A*.2d at 1134.]

The Court may believe it has clarified and simplified law. It is doubtful, however, that it will be able to contain the unpre-

dictable inconsistencies that its new rule will spawn. In this case, an officer is denied recovery for injuries attributable to a third person's act of negligence that did not cause the emergency. *Ante* at 74, 583 *A.*2d at 1133. We could not have been more emphatic previously in holding that such negligence is not immune from recovery. For example, in *Wietecha v. Peoronard, supra,* 102 *N.J.* 591, 510 *A.*2d 19, the Court allowed recovery by a police officer against a third person whose ordinary negligence did not cause the emergency. The officer was allowed to recover, we are now told, because the emergency, an automobile accident, posed "the risk of the newly-arrived car striking the already stopped vehicle, hitting the officer assisting one who has run out of gas or side-swiping an officer ticketing an illegally parked car." *Ante* at 77, 583 *A.*2d at 1134. That kind of risk, the Court explains, is different from the ordinary negligence that is involved in this case, because the ordinary negligence here is "incidental and inherent in [the officer's] duties." *Ibid.* It defies both the common sense of experience and the intuition of imagination to understand how the immunized negligence in this case is an "inherent" part of the "normal performance" of the officer's emergency duties and the actionable negligence in *Wietecha* is not. The Court thus seemingly believes that an officer who responds to an automobile accident to rescue a stricken person and is injured by an errant motorist may recover against that person, but an officer engaged in exactly the same kind of rescue who falls over an obstacle or slips on a substance or is struck by a object and sustains injuries may not recover from the person responsible, even if he or she is not the victim receiving the officer's attention. The anomaly exemplified by such disparate results is reminiscent of similar peculiarities that have marked the Court's ongoing romance with the fireman's rule. Focusing on an asserted distinction in the fireman's rule between ordinary and egregious negligence, Justice Clifford complained in *Mahoney:*

> As I understand it, the Court would permit plaintiff's case to go forward against Carus on the willful-wanton theory, but would not allow the same

plaintiff to proceed against defendant Inversand, the occupier of the premises, on a claim of simple negligence in the form of, say, sloppy housekeeping (failure to isolate combustible materials), or a careless employee's failure to extinguish a cigarette, or an overworked plant electrician's primitive wiring job. Same fireman, same hazard, same accident, same injury, same causes acting together to produce the very same fire (Carus's willfully and wantonly negligent use and shipment of hazardous containers plus Inversand's negligence in any one of a limitless variety of forms). Result: potential liability of Carus, no cognizable claim against Inversand. Or, hypothetically, two firemen fighting separate fires in different locations. Same hazard, same kind of accident, same injury. One sues in willful and wanton misconduct, the other sues in simple negligence: the first recovers, the second is barred by what has now become the tattered remains of the "fireman's rule." I do not view as sound a policy that can—and will—produce such quaint results as between identically situated plaintiffs. That circumstance should give one pause.

[*Mahoney, supra,* 102 *N.J.* at 585–86, 510 *A.*2d 4 (citation omitted) (Clifford, J., dissenting).]

I expressed a similar criticism in *Wietecha* with respect to the differences that the fireman's rule attempted to find between before-and-after negligence:

In my opinion this case can be used as a classic illustration of the fundamentally unfair and irrational results that will be generated by the "fireman's rule." * * * In this case, ... negligent car operators are given refuge under the immunity of the "fireman's rule" merely because their negligence occurred before plaintiffs arrived at the scene. We have in effect treated unequally two police officers sustaining virtually identical injuries in the same series of events. This case unfortunately exemplifies the peculiarities of our "fireman's rule."

[*Id.* 102 *N.J.* at 597, 510 *A.*2d 19 (Handler, J., dissenting).]

The contradictions of the fireman's rule doctrine will continue to proliferate.

Moreover, while the Court extends the immunity with respect to acts of ordinary negligence that cause injury in the normal course of the officer's duties, it resists extending it to more serious forms of negligence. I commend the Court for its resistance to broadening the immunity to cover acts of willful/wanton negligence. Nevertheless, this distinction remains as an added substantive layer that further complicates this bizarre doctrine. The Court's new standard does nothing to eliminate the inconsistencies arising from this distinction. I am constrained to repeat what I stated in *Mahoney:*

I can sympathize with the Court in its struggle to find a reasonable explanation for an obviously sound, fair and just result. This case unfortunately

exemplifies the hairsplitting that is inevitably occasioned by retaining the fireman's rule and then attempting to identify and articulate the reason that will credibly distinguish cases in which recovery is allowed from those in which it is denied. While we in the law are conditioned to drawing lines, the majority by its newly-adopted rationale commits courts and juries in these cases to a fate of continuously trying to distinguish "normal" risks from "abnormal" risks from "independent causes." Because of the impossibility of sensibly defining and confining so-called normal risks that police officers and firefighters knowingly and voluntarily assume, I am confirmed in the belief that the willful and wanton misconduct exception, like the "independent cause" exception, is simply a convenient rationalization seized upon to overcome and ameliorate the arbitrary and regressive effects that inhere in the fireman's rule. *See, Berko v. Freda, supra,* 93 *N.J.* at 91, 97 [459 *A.*2d 663] (dissenting opinion). The conundrum that is the "fireman's rule" remains inexplicable and insoluble.
[*Mahoney,* 102 *N.J.* at 589, 510 *A.*2d 4.]

See also *Entwistle v. Draves,* 102 *N.J.* 559, 510 *A.*2d 1 (1986) (simply characterizing conduct as willful and wanton does not make it so for purposes of circumventing the fireman's rule).

I believe the force of these several criticisms carries over to the Court's decision today. Those responsible for applying the rule of law the Court now lays down must distinguish acts of ordinary negligence from wanton/willful negligence; acts of negligence that are a normal, or inherent, or incidental part of the performance of duties from acts of negligence that fall beyond such performance; and, one may still suppose, acts of negligence that cause the emergency from those that are independent of the emergency. It is doubtful that courts and juries will be able to make sense of these distinctions or achieve fair and consistent results.

One may ponder whether, in extending the immunity of the fireman's rule to what simply appears to be work-related negligence, the Court advances any important public policy that is assertedly embraced by the "fireman's rule." The Court avers "that the policies and goals that bar a firefighter and police officer from recovering for injuries sustained from an ordinary act of negligence that occasioned the officer's presence on the premises are equally applicable" to injuries sustained from work-related negligence. *Ante* at 76, 583 *A.*2d at 1134. However, the Court, reasoning from the early case of *Krauth v. Geller, supra,* 31 *N.J.* 270, 157 *A.*2d 129, stressed in *Berko v.*

*Freda, supra,* 93 *N.J.* at 88, 459 *A.*2d 663, "a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's perform-ance of necessary, albeit hazardous, public duties." The Court was concerned with acts of negligence that were directly impli-cated in the officer's own duty to respond to an emergency. It explained that "a citizen should not have to run the risk of a civil judgment against him for negligence acts that *occasion* the presence of a firefighter at the scene of a carelessly-set fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct." *Id.* at 88–89, 459 *A.*2d 663 (emphasis added).

Arguably, the traditional immunity indirectly reinforces the nondelegable duty of the officer to assist the needy, albeit negligent, victim. The officer's duty to the victim, in effect, supersedes any duty of care that is otherwise owed by the victim to the officer. *See Cowan v. Doering,* 111 *N.J.* 451, 460–67, 545 *A.*2d 159 (1988) (the duty of care owed by a professional to another may not be diluted by considering the contributory negligence of the injured party); *Gaido v. Weiser,* 115 *N.J.* 310, 316, 558 *A.*2d 845 (1989) (Handler, J., concurring) (same). However, the Court's new rule now immunizes not the negligence of victims to whom the duty of care is owed by the officer but the negligence of strangers to whom no duty is owed under the circumstances.

The Court's opinion also perpetuates the artificial distinction between policemen and other employees. The Court heretofore attempted to distinguish police officers and firefighters who are paid to "confront danger" from other kinds of public employees on the ground that the latter are paid merely "to perform some other public function[s] that may incidentally involve risk." *Berko, supra,* 93 *N.J.* at 86, 459 *A.*2d 663. This asserted distinction obscures the fact that there are more similarities than differences between police officers and firefighters and a host of other public employees. Police officers on traffic patrol

may be exposed to risks entirely comparable to highway workers doing road work. *Berko, supra,* 93 *N.J.* at 95–96, 459 *A.*2d 663 (Handler, J., dissenting). Here a police officer reporting to an emergency was exposed to a risk that would have been actionable had he been a local health inspector or sanitation worker. *See Chipps v. Newmarket Condo Ass'n,* 228 *N.J.Super.* 144, 147, 549 *A.*2d 66 (Law Div.1988).

The Court, in denying common-law liability attributable to work-related ordinary negligence, seems to have imported into the common-law of torts principles that dominate the statutory fields of workers' compensation and public employment pension systems. Its holding in this case bars a common-law tort action for injuries attributable to negligence "inherent in the performance" or occurring in the "normal performance" of the regular duties of the officer. There is not much to distinguish this limitation on liability from the limitations applicable to workers' compensation, *e.g., Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 543 *A.*2d 45 (1988) (injury in parking lot of employer is compensable because sufficiently work-related); *Coleman v. Cycle Transformer Corp.,* 105 *N.J.* 285, 520 *A.*2d 1341 (1986) (ignition of employee's hair by lighting cigarette during lunch break on employer's premises not compensable because it did not "arise out of employment"), or public-employment pensions, *e.g., Kane v. Board of Trustees,* 100 *N.J.* 651, 498 *A.*2d 1252 (1985) (a "traumatic event" entails an extraordinary external force in order for ensuing disability to be considered "accidental" as opposed to "ordinary"). However, the restrictions on recovery in these statutory areas are directed to specific legislatively-determined objectives and serve prescribed statutory governmental purposes. The policy considerations in those fields, the certainty of recovery and the preserving of public moneys, respectively, call for restrictions on tort recovery. These considerations, however, have no bearing on whether an injury suffered by a police officer as a result of another's wrongdoing that is unrelated to the emergency should be actionable.

I strongly believe we should abrogate the fireman's rule. The rule, as currently formulated, is obtuse and abstruse. It needlessly extends an immunity that has a dubious value. We have, except in the face of the most compelling countervailing reasons, eliminated and restricted common-law immunities, *see, e.g., Weinberg v. Dinger,* 106 *N.J.* 469, 492–95, 524 *A.*2d 366 (1987) (public utility not immune from liability for resulting fire attributable to failure to maintain water pressure). I do not see how the beneficent purposes of the law would be undermined if claims based on such ordinary work-related negligence were to be addressed and resolved by the application of generally-understood and accepted tort principles. We would be better served if we were to invoke principles of duty and proximate cause, *e.g., Berko v. Freda, supra,* 93 *N.J.* at 93, 459 *A.*2d 663 (Handler, J., dissenting), which can be molded to special and often unique circumstances, *e.g., People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246, 495 *A.*2d 107 (1985). The creativity and flexibility of the common-law surely can devise standards defining duty, proximate cause, and comparative negligence that suitably address all the circumstances that surround an officer who must respond to an emergency on behalf of a private citizen. *E.g., Cella v. Interstate Properties,* 232 *N.J.Super.* 232, 556 *A.*2d 1262 (App.Div.1989).

I thus continue to believe that the "the distinction[s drawn by the Court] impede ... the effectuation of a fundamental tenet of our jurisprudence that should apply to firefighters and policemen: the right to redress for those injured as a result of the wrongdoing of others." *Mahoney, supra,* 102 *N.J.* at 590–91, 510 *A.*2d 4 (Handler, J., dissenting). Minimally, we should confine the doctrine to its original channel: barring suit for an act of ordinary negligence that occasions the presence of the firefighter or police officer at the place where he or she is injured. *See Cella v. Interstate Properties, supra,* 232 *N.J.Super.* 232, 556 *A.*2d 1262; *Ferraro v. Demetrakis,* 167 *N.J.Super.* 429, 400 *A.*2d 1227 (App.Div.), *certif. den.,* 81 *N.J.* 290, 405

*A.*2d 834 (1979); *Siligato v. Hiles,* 236 *N.J.Super.* 64, 563 *A.*2d 1172 (Law Div.1989); *Brown Trucking Co. v. Flexon Indus.,* 230 *N.J.Super.* 117, 552 *A.*2d 1026 (Law Div.1988); *Chipps v. Newmarket Condo Ass'n, supra,* 228 *N.J.Super.* 144, 549 *A.*2d 66; *McCarthy v. Ehrens,* 212 *N.J.Super.* 249, 514 *A.*2d 864 (Law Div.1986).

I realize that by this time I should be content to acknowledge that my dissenting view commands no allegiance. Disaffection with the Court's position can be explained and may be excused in light of the fact that in dealing with the fireman's rule the Court has not been a model of doctrinal stability, often contradicting itself in successive opinions. Compare *Hill v. Yaskin,* 75 *N.J.* 139, 380 *A.*2d 1107 (1987) with *Trainor v. Santana,* 86 *N.J.* 403, 432 *A.*2d 23 (1981); compare this case with *Wietecha, supra.* Nevertheless, if confronted with a legal position that has become impregnable, I realize that judicial convention, good manners, and common sense would counsel that I withdraw from the fray and cast my lot with the majority. *See Lynch v. Rubacky,* 85 *N.J.* 65, 78–79, 424 *A.*2d 1169 (1981) (Clifford and Schreiber, JJ., dissenting) (referring to the teachings of the Talmud, as related by Justice Frankfurter to Jerome Frank: "The Talmud says that if, when you are stone sober, a man tells you that you are drunk, knock his teeth out; if two men tell you that, laugh at them; but if three men tell you that, go to bed."). However, although the majority appears to be impregnable, its fireman's rule is not. Rather, it is quite fecund and continues to propagate. Hence, if we were dealing simply with the parent doctrine, I would capitulate. But we are not—we are dealing with the doctrine's unruly offspring. I expect eventually to join the Court when, and if, the doctrine becomes barren or moribund.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—Justice HANDLER—1.