616 A.2d 930

PATRICIA SAVINO, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF FRANK T. SAVINO, DECEASED, AND PATRICIA SAVINO, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, CROSS–RESPONDENTS, v. PATERSON HOUSING AUTHORITY, DEFENDANT–RESPONDENT, CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1992—Decided November 18, 1992.

---

[2] The issue before us does not deal with a question of preferred practice. In fact, the Public Defender originally "pooled" defendant's case to an attorney who subsequently returned the case to the Public Defender when appointed to the Bench. *We do not suggest that a defendant can object to the Public Defender's decision to "pool" a case.* Here, the Public Defender wants to retain the case, and the issue deals with the propriety of the Public Defender's exercise of her initial right to select counsel for a defendant. *See e.g. N.J.S.A.* 2A:158A–9, –10.

Before Judges BILDER and BAIME.

*Alan Roth* argued the cause for appellants (Bendit, *Weinstock & Sharbaugh,* attorneys; *Alan Roth,* on the brief).

*Edward L. Thornton* argued the cause for respondent (*Methfessel & Werbel,* attorneys; *Edward L. Thornton,* on the brief).

The opinion of the court was delivered by

318

BILDER, J.A.D.

This is a personal injury, stairway fall-down case. Plaintiff's decedent [1], a Paterson police officer, appeals from an October 29, 1991 order of the Law Division granting defendant Paterson Housing Authority an involuntary dismissal when plaintiff rested her case in a liability only trial. In his oral opinion of October 8, 1991, the trial judge rejected defendant's contention that the claim was barred by the Fireman's Rule but concluded that the defendant was immunized by *N.J.S.A.* 59:2–10, a section of the New Jersey Tort Claims Act. On appeal, plaintiff contends the trial judge correctly found that the circumstances surrounding the accident made the Fireman's Rule inapplicable but erred in applying the Tort Claim Act immunity to defendant's wanton and willful conduct. Defendant cross-appeals from a November 14, 1986 order of the Law Division which permitted plaintiff's decedent to file a late notice of claim and an order of December 19, 1986 which denied defendant's motion to vacate the earlier November 14, 1986 order.

On February 3, 1986, while responding to a report of domestic violence at Apartment 1F in Building 4 of defendant's Christopher Columbus project, plaintiff's decedent, Frank Savino, a Lieutenant in the Paterson police department, was injured when he fell in a stairwell while going upstairs from the lobby floor to the floor above on which Apartment 1F was located. In depositions taken before his death, Savino gave the following account of the accident:

> I struck a sharp object and I fell back to the left turning my left ankle. But I struck that object with my right foot.

He described the object as a piece of steel, probably part of the steel strip nosing, sticking almost straight up from the step.

Testimony was presented from other police officers that these were concrete steps with metal nosings; that the steps

---

[1] The injured plaintiff died during the pendency of this matter, apparently of unrelated causes, and his wife as administratrix ad prosequendum and general administrator of his estate was substituted in his stead.

were and for some long period of time had been in deplorable condition; that concrete was coming off the steps; that the lighting was very poor, many of the lights being out or missing; that signs had been posted warning that the steps should not be used and that use was at one's own risk; and that the elevators were often inoperative. Officer Weston, Savino's partner at the time of the accident, said the steel edge molding around the concrete was jagged.

All the officers testified that this was a high-crime area; the building was rife with vandalism; and garbage was usually present in the halls and stairs. In his deposition, Savino himself testified that inoperative elevators were a common occurrence; that vandalism was a problem; that the description of the area as a crime area referred to narcotics; that maintenance problems were routine; that poor lighting, no lighting and filthy conditions were common problems; and that garbage in the halls was a common problem.

In his direct testimony, Officer Weston gave the following description of the stairwells in Building 4:

They were very deplorable. The concrete was cracked. I don't recall the metal molding at that time being—you know, because we would of took care of that right away. Evidently, there was a lot of traffic, people moving furniture, they could of destroyed the stripping around the concrete.

When asked if he ever saw maintenance people doing any repairs to the stairways or metal linings, Weston responded:

No sir. They only replace light bulbs, clean garbage out of hallways, things of that nature.

As to accumulations of materials in the stairwells, he said:

[Garbage accumulated] at periods of times and then we [the police] had to get maintenance in there to remove it, furniture, etc., that people throw out.

As to the lighting:

Very deplorable. Lights were put in one day and knocked out the next. A lot of vandalism.

On cross-examination, Weston agreed that the defendant had maintenance crews doing routine maintenance for the upkeep of the property which he particularly noted did not include

■■■■■■■■■■■■■■■■■■■■

masonry work. It is against this factual background that we must examine the legal questions presented.

### The Fireman's Rule

■ The circumstances of Savino's accident clearly make the Fireman's Rule applicable.

In *Rosa v. Dunkin' Donuts of Passaic*, 122 *N.J.* 66, 583 *A.*2d 1129 (1991), the Supreme Court reaffirmed the principle that police and fire officers may not recover for harms caused by risks inherent and incidental to the performance of their duties.

> Firefighters and police officers must be held to assume the risks that are to be expected in encountering the hazards and risks of their job. They are risks inherent and incidental to the performance of the duties of a firefighter and police officer. Such risks properly include an ordinary act of negligence that an officer may encounter at the scene of the incident. *Id.* at 73, 583 *A.*2d 1129.

As occurred here, the harm may be caused by negligence which is unconnected with the reason for the officer's presence. In *Rosa*, the harm was caused by the presence of a slippery substance on the Dunkin' Donuts floor but the police officer was present in response to a call for emergency assistance. *Id.* at 69, 583 *A.*2d 1129. In the instant case, the harm was caused by a defective step, but the officer was present in response to a call for emergency assistance. Savino's fall was a risk inherent in his law enforcement duties. *Id.* at 70, 583 *A.*2d 1129. *See Maryland Cas. Co. v. Heiot*, 224 *N.J.Super.* 441, 540 *A.*2d 920 (Law Div.1988) where the firefighter slipped on icy steps while responding to a fire; *also Cella v. Interstate Properties*, 232 *N.J.Super.* 232, 556 *A.*2d 1262 (App.Div.1989) where the officer fell on a patch of ice in parking lot while investigating the presence of a suspicious vehicle (failure to apply Fireman's Rule disapproved by Supreme Court in *Rosa v. Dunkin' Donuts of Passaic, supra*, 122 *N.J.* at 77, 583 *A.*2d 1129); *cf. McGriff v. Newark Housing Authority*, 259 *N.J.Super.* 407, 409, 613 *A.*2d 1172 (App.Div.1992) (Fireman's Rule inapplicable where officer fell on ice in parking lot while going to his car).

Our inquiry does not end here because the immunity of the Fireman's Rule does not extend to a defendant whose willful and wanton misconduct created the hazard that caused injury to the policeman. *See Mahoney v. Carus Chemical Co., Inc.*, 102 *N.J.* 564, 579, 510 *A.*2d 4 (1986). In his oral opinion, the trial judge found that a jury could find from the evidence that the conduct of defendant was willful and wanton. We disagree.

In *Mahoney,* the court carefully noted the meaning of willful and wanton, noting that the terms in which its concept of such conduct had been expressed in *McLaughlin v. Rova Farms, Inc.*, 56 *N.J.* 288, 266 *A.*2d 284 (1970).

> [I]t must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. [*Id.* at 305, 266 *A.*2d 284]

We entertain no doubt that the evidence presented by the plaintiff permits a finding of deplorable conditions which were likely to result in personal injuries. The difficult question is whether the evidence permits a finding that the defendant Housing Authority acted with reckless indifference to the consequences and a finding that it acted in an intentional manner. We are persuaded that in the absence of evidence that it had a choice, that, for example, it had the funds to correct these conditions or the power to close the building, the defendant Housing Authority cannot be found to have been guilty of willful and wanton misconduct in creating the tripping hazard which caused Savino to fall and twist his ankle. If anything, the evidence presented by the plaintiff pictures a continuous effort by defendant to do its best in the face of an overwhelming situation. Plaintiff's claim is barred by the Fireman's Rule.

In view of this conclusion, we need not consider plaintiff's contentions as to the Tort Claims Act nor the cross-appeal.

Affirmed.