638 A.2d 135

JAMES BOYER AND DONNA BOYER, HUSBAND AND WIFE,
PLAINTIFFS–APPELLANTS, v. ANCHOR DISPOSAL AND
SUNSHINER MAINTENANCE, DEFENDANTS–RESPON-
DENTS, AND RMB REALTY, INDIVIDUALLY AND AS OWN-
ERS OF OCEAN ONE MALL, MOOR & SOUTH, AND JOHN DOE
MAINTENANCE PERSON, DEFENDANTS.

Argued October 25, 1993—Decided March 14, 1994.

*Lars S. Hyberg* argued the cause for appellants (*McAllister, Westmoreland, Vesper & Schwartz,* attorneys).

*Alan G. Giebner* argued the cause for respondent Sunshiner Maintenance (*Buonadonna, Benson & Parenti,* attorneys).

*Lawrence P. Engrissei* argued the cause for respondent Anchor Disposal (*Thomas Dempster, III,* attorney).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns an application of the firefighters' rule, which limits in certain circumstances the liability of one whose negligence causes injuries to a firefighter or police officer performing emergency duties. Because the Legislature has, in effect,

abolished the firefighters' rule in New Jersey, *L.*1993, *c.* 366, this case is probably the last in which this Court will consider an application of the rule. The Act is prospective, however, applying to injuries, diseases, or deaths occurring only on or after the Act's effective date of January 5, 1994. This accident occurred in 1988.

■ The specific question in this case is whether the rule, as it existed prior to the legislative changes, bars from recovery a fire inspector who, while at a shopping mall to look for fire-code violations, suffers a slip-and-fall accident in a common area of the mall. We hold that those circumstances do not implicate the values of the firefighters' rule and do not bar recovery if conditions for liability are otherwise established.

I

■ The details of the case are somewhat sketchy. Initially the matter was resolved on motion for summary judgment. Because the facts must be considered in the light most favorable to the opposing party on a summary-judgment motion, we accept plaintiff James Boyer's version. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954). (Reference hereinafter to "plaintiff" is to James Boyer.)

On August 11, 1988, plaintiff was working as a fire inspector for the Atlantic City Fire Department. He was inspecting the Ocean One Mall in Atlantic City for fire-code violations. As he was leaving the interior of the mall, he walked out a fire-exit door that led to Arkansas Avenue. After passing through the doorway, he walked approximately ten feet and stepped off the curb of the sidewalk onto the driveway, whereupon he felt his foot slip out from under him. As he slipped, his knee gave way and he landed on his left knee, buttocks, and lower back. He lay on the ground in severe pain until he managed to stand up. As soon as he got back on his feet, he noticed an oily substance on which he had slipped. The substance was spread out approximately four to six square feet and was very dark in color. An investigation later disclosed that it was some type of hydraulic fluid. The Ocean One

Mall manager informed a fire-department representative that an Anchor Disposal trash truck had pulled up to that location earlier in the day and had broken its main hydraulic-fluid line causing the leak on the driveway. Plaintiff said that he never saw the oily spot before he fell: "I was focused on the other side of the driveway at the standpipe [the water supply main] and I was looking at the standpipe, and when I stepped off the sidewalk, I lost my footing." After the accident, the fire department issued a notice to the Ocean One Mall for flammable or combustible liquid on the pavement and gave it twenty-four hours for cleanup.

Defendants, recognizing that as a fire inspector Boyer did not fit the typical description of a public employee who should be affected by the firefighters' rule, relied on the Appellate Division's earlier holding in *Walsh v. Madison Park Properties, Ltd.*, 102 *N.J.Super.* 134, 245 A.2d 512 (1968). In that case, two firemen were injured while inspecting a fire escape that was negligently maintained. That court held that the

> [landowner's] duty to exercise reasonable care did not encompass an obligation to affirmatively guard against defects in apparatus which plaintiffs were in the process of inspecting pursuant to the duty which brought them to its premises. * * * It is the possibility of such violations that creates the need for the inspector's services. Thus an employee of a contractor engaged to repair a water tower may not recover for injuries sustained (due to the defective condition of the tower) while engaged in making an inspection of the tower for the purpose of determining what repairs are necessary * * *.
>
> [*Id.* at 140, 245 A.2d 512.]

In its unreported opinion in this case, the Appellate Division concluded that Boyer's complaint was barred by "the mechanism of his injury; a risk that the fire code violations he was inspecting for may actually exist and cause him injury. In fact, he actually was searching for the very kind of violation that he encountered when he slipped and fell." The court emphasized that the door through which he had left the building was a fire exit. The court did not find significant that plaintiff's injuries had been caused by the negligence of a third party instead of the negligence of the owner/occupier of the premises. Rather, the court found that

"[t]he fact that a party other than the land occupier may have caused the violation is of no moment."

We granted plaintiffs' petition for certification, 133 *N.J.* 444, 627 *A.*2d 1148 (1993).

## II

The firefighters' rule in one form or another has gained acceptance in the vast majority of American jurisdictions. *See, e.g., Lipson v. Superior Court,* 31 *Cal.*3d 362, 182 *Cal.Rptr.* 629, 644 *P.*2d 822 (1982); *Trainor v. Santana,* 86 *N.J.* 403, 406, 432 *A.*2d 23 (1981). Despite widespread acceptance, the doctrine lacks a clear conceptual outline. Although a catchy phrase, the "firefighters' rule" is not as self-explanatory as, for example, the doctrine of "one person, one vote." Its core meaning reflected what courts perceived to be the consensus of the community about the way that the risks of accidental injuries in public-safety work were to be borne. Under that view, a firefighter who responds to a house fire occasioned by the occupant's careless act of falling asleep in a chair while smoking does not expect that the occupant shall answer for injuries sustained by the firefighter in responding to that very act of negligence summoning his presence. Equally clear was the view that an arsonist would not enjoy such an immunity.

Articulating the principles that guide courts in making such distinctions is difficult. The distinctions that the common law drew between licensees and invitees were the bases of the doctrine's early premise. Those distinctions " 'were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism.' " *Smith v. Arbaugh's Restaurant, Inc.,* 469 *F.*2d 97, 101 (D.C.Cir.1972) (quoting *Kermarec v. Compagnie Generale Transatlantique,* 358 *U.S.* 625, 630, 79 *S.Ct.* 406, 410, 3 *L.Ed.*2d 550, 554 (1959)), *cert. denied,* 412 *U.S.* 939, 93 *S.Ct.* 2774, 37 *L.Ed.*2d 399 (1973).

New Jersey's legal climate has not been congenial to distinctions based on status. *Taylor v. New Jersey Highway Auth.,* 22

*N.J.* 454, 463, 126 *A.*2d 313 (1956). Thus, in approaching the problem of the firefighters' rule, New Jersey based its rule not on the classification of the firefighter as invitee or licensee, but on the more fundamental considerations of the order of social structure. In adopting a firefighters' rule, our Court said:

> The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. See *Rappaport v. Nichols,* 31 *N.J.* 188, 205 [156 *A.*2d 1] (1959); *Wytupeck v. City of Camden,* 25 *N.J.* 450, 461 [136 *A.*2d 887] (1957).
>
> * * * The rationale of the prevailing [firefighters'] rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. See *Meistrich v. Casino Arena Attractions, Inc.,* 31 *N.J.* 44 [155 *A.*2d 90] (1959). Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.
>
> [*Krauth v. Geller,* 31 *N.J.* 270, 273–74, 157 *A.*2d 129 (1960).]

In that sense, New Jersey's classification of its firefighters has been considered unique. See Larry D. Scheafer, Annotation, *Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of His Duty,* 11 *A.L.R.*4th 597, 606–07 (1982). Thus, even in its pronouncement, this Court emphasized the narrow content of the doctrine. It does not extend to insulate landowners who create undue risks of injury or who fail to give warnings of a hidden peril beyond those inevitably involved in firefighting; nor does it bar negligence claims that may occur after the firefighters have reached the scene of a fire. Thus, we expressed the doctrine in terms of its societal value. We stated our understanding of those values in *Berko v. Freda,* 93 *N.J.* 81,

459 A.2d 663 (1983). That case extended the doctrine to a police officer responding to an emergency. We said:

> There is at work here a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties. In the absence of a legislative expression of contrary policy, a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly-set fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct.
>
> [*Id.* at 88–89, 459 A.2d 663 (footnote omitted).]

The Legislature has since expressed a contrary policy that shall apply in "firefighters' rule" cases. But for the Legislature's explicit statement that the policy should be prospective only, our decision now would be shaped by that legislative definition of the "public policy component" of the firefighters' rule. *Id.* at 88, 459 A.2d 663. With deference to our concurring member, we believe that we should decide this case under our law as it existed at the time of this accident.

### III

The question then is whether our precedent would have extended the firefighters' rule to cover this situation. We hold that when the issue comes down to expanding the firefighters' rule to insulate the creator of a general risk to others that neither occasions the presence of the public-safety officer nor defines the scene at which the officer must perform emergency duties, the values that informed our application of the doctrine in *Berko, supra,* 93 *N.J.* 81, 459 A.2d 663, are not present.

In *Rosa v. Dunkin' Donuts,* 122 *N.J.* 66, 583 A.2d 1129 (1991), we held that the acts of negligence that are insulated are not only those that occasion the presence of the officer (as in the case of one who falls asleep and carelessly starts a fire or, as in *Berko,* leaves keys in a car that may be stolen), but, in addition, those acts of negligence that define the scene of the emergency response. Officer Rosa's duty compelled him to traverse an area

sprinkled with powder in order to render medical assistance to an unconscious female employee. "He could not have fulfilled his duty without passing over the area in question." *Id.* at 74, 583 *A.*2d 1129. This Court thus concluded that the policies and goals of the firefighters' rule "are equally applicable to bar liability for injuries that arise from an act of ordinary negligence posing a hazard that is incidental to and inherent in the performance of the [firefighter's] duties." *Id.* at 76, 583 *A.*2d 1129.

Boyer encountered a risk that was not inherently related to his firematic duties. That the accident occurred outside a fire exit and the substance happened to have been hazardous was mere coincidence. The accident could have been caused as well by salad oil or fountain syrup that had leaked out from the garbage truck. Like the later-arriving motorist in *Wietecha v. Peoronard,* 102 *N.J.* 591, 510 *A.*2d 19 (1986), who collided with a vehicle stopped at the scene of the accident, these defendants cannot complain that the one injured through their negligence happened to be a public-safety officer. Defendants' negligence neither occasioned nor defined the scene at which the officer was bound to respond. The situation resembles one in which a volunteer firefighter en route to a fire in a private passenger car had stopped at a red light and had been struck in the rear by another motorist. Although the risk encountered arose during the performance of firefighting duties, the risk was not inherent in nor an inevitable part of those duties. Any member of the public could have encountered the risk in equal measure.

Indeed, had this plaintiff been looking for the substance, he would not have slipped on it. The firefighters' rule, then, is but a shorthand expression of a careful balance of the relationship of particular parties. In his separate opinion in *Mahoney v. Carus Chemical Co., Inc.,* 102 *N.J.* 564, 510 *A.*2d 4 (1986) (dissenting from the exclusion of willful and wanton misconduct from the rule), Justice Clifford explained:

> What has evolved from *Krauth* in the twenty-six years that have passed since it was decided is a sensible, straightforward, bright-line rule, distinguished by its

ease of application: if a fireman is hurt as a result of his exposure to the risks of injury that are inevitably involved in firefighting, then his recourse lies with the public fisc, not with the tortfeasor.

[*Id.* at 584, 510 *A.*2d 4.]

When the firefighter is hurt as a result of exposure to risks of injury that are neither inevitably involved in firefighting nor unavoidable in the sense that the officer could not have fulfilled firematic duties without traversing the area in question, the values of the doctrine are not implicated.

We do not confront in this case the premise of *Walsh, supra,* 102 *N.J.Super.* 134, 245 *A.*2d 512, that when a fire officer is injured in the course of inspecting a fire escape, the officer may not complain in law that the fire escape was unsafe. Because the fire officers in *Walsh* were not engaged in fighting a fire, the court did not base its ruling on an application of the firefighters' rule. *Id.* at 139, 245 *A.*2d 512. Rather, the court focused on the nature of the officers' duties, which involved inspecting fire escapes and other safety equipment. *Ibid.*

Plaintiff was not inspecting the surface of the parking lot at the time of his accident; rather, his attention was focused on a standpipe on the other side of the driveway. Thus, happenstance, not duty, occasioned his slip and fall.

Finally, we agree with the court below that if the doctrine applies to the owner of premises, it applies to a third party who has created the condition that occasions the presence of the officer or defines the scene of emergency response. We do not, however, find those prerequisites to the firefighters' rule present here. We acknowledge that the lines between the cases are not always easily drawn (as evidenced by the rulings below). Yet, "we must here also accept the fact that drawing lines is the business of judging." *Wietecha, supra,* 102 *N.J.* at 596, 510 *A.*2d 19. We have attempted to draw those lines on the basis of what we perceived to be the public-policy component of the firefighters' rule. *See Mahoney, supra,* 102 *N.J.* 564, 510 *A.*2d 4 (holding property owner not

immunized for willful and wanton misconduct that causes injury to firefighter). The Legislature has settled the public policy issue.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.

HANDLER, J., concurring in part.

The Court allows recovery for personal injuries to a fire inspector who, while inspecting a shopping mall for fire-code infractions, slips and falls in the mall's parking lot. In so doing, the Court properly declines to broaden further the firefighters' rule. However, it takes pains to express its continued allegiance to the rule.

The Court, as is its prerogative, never agreed with the view that the firefighters' rule violates "a fundamental tenent of our jurisprudence . . .: the right of redress for those injured as a result of the wrongdoing of others." *Mahoney v. Carus Chem. Co.*, 102 *N.J.* 564, 591, 510 *A.*2d 4 (1986) (Handler, J., dissenting). That view, however, ought not, at this juncture, be treated dismissively. The firefighters' rule and its values have been superseded. The public policy of the State is now expressed by *L.*1993, *c.* 366 (Jan. 5, 1994). That enactment grants firefighters, police officers, and emergency service personnel the right to seek recovery for injuries, diseases, and death, except when such losses are caused by a co-worker or an employer.

The Court could take advantage of this change of policy reflected by the statute, which now abolishes the rule. This legislative mandate constitutes a clarion expression of the State's public policy. *See, e.g., Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 71, 417 *A.*2d 505 (1980) (observing that public policy can be expressed by legislation). It is confirmation that the values undergirding the firefighters' rule "have become moribund and have been replaced by a different set of values." *See Renz v. Penn Central Corp.*, 87 *N.J.* 437, 456, 435 *A.*2d 540 (1981).

In light of the injustice and confusion, the quirks and inconsistencies that attend the firefighters' rule, the doctrine, which no longer reflects the common consent of the community, ought not to be continued. The spirit of the common law calls for a reassessment of the reasons that originally supported the firefighters' rule. The legislative judgment is that those reasons no longer comport with a sound public policy. *Renz, supra,* 87 *N.J.* at 455, 435 *A.*2d 540. That legislation could be a powerful catalyst for the Court to exert "[t]he creativity and the flexibility of the common law ... [to] devise standards defining duty, proximate cause, and comparative negligence that suitably address all the circumstances that surround an officer who must respond to an emergency on behalf of a private citizen." *Rosa v. Dunkin' Donuts,* 122 *N.J.* 66, 85, 583 *A.*2d 1129 (1991) (Handler, J., dissenting).

The new legislation provides a statutory cause of action for accidental injuries occurring on or after January 5, 1994. It does not seem right that now, simply as a matter of judicial preference, injured police officers and firefighters should continue to be denied their right to seek recovery because of this Court's refusal to abandon a "bizarre doctrine." *Id.* at 81, 583 *A.*2d 1129 (Handler, J., dissenting). *See generally* Joseph Scholz, *Rosa v. Dunkin' Donuts: The Fireman's Rule Revisited,* 44 *Rutgers L.Rev.* 405, 425 (1992) (arguing that *Rosa* "left the rule in a state of doctrinal confusion"). That is especially so given the fact that the judicially-created firefighters' rule itself is "ultimately one of public policy." *Krauth v. Geller,* 31 *N.J.* 270, 273, 157 *A.*2d 129 (1960).

Justice HANDLER, concurs in part.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—none.