917 A.2d 239

HARRY RUIZ AND SHARON RUIZ, HIS WIFE, PLAINTIFFS–RESPONDENTS, v. ANGEL MERO (IMPROPERLY PLEADED AS ANGELO MERO), SILVANA'S BAR & RESTAURANT, RICHARD ROSSI AND RICHARD ROSSI REAL ESTATE CORPORATION, DEFENDANTS–APPELLANTS, AND JOHN DOES 1 THROUGH 10 (FICTITIOUS NAMES FOR THE PERSONS, PARTNERSHIPS AND/OR CORPORATIONS INTENDED), DEFENDANTS.

Argued January 29, 2007—Decided March 13, 2007.

*Gordon S. Graber* argued the cause for appellants Angel Mero and Silvana's Bar & Restaurant (*Sullivan and Graber,* attorneys; *Mr. Graber* and *Alissa A. Mendys,* on the brief).

*Brian W. McAlindin* argued the cause for appellants Richard Rossi and Richard Rossi Real Estate Corporation (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys; *Mr. McAlindin* and *Jake K. Prudhomme,* on the briefs).

*David H. Ironson* argued the cause for respondents (*Einhorn, Harris, Ascher, Barbarito, Frost & Ironson,* attorneys; *Mr. Ironson* and *Thomas F. Dorn,* on the briefs).

Justice LONG delivered the opinion of the Court.

At issue in this appeal is the continued vitality of the firefighters' rule, a common-law doctrine that bars a first responder from recovering damages from a property owner for injuries sustained while confronting an emergency on the owner's premises. In this case, a police officer sued a commercial landowner for injuries he suffered when quelling a disturbance at the owner's bar. The trial judge dismissed the complaint as barred by the firefighters' rule. The Appellate Division reversed and reinstated the complaint, on the ground that the firefighters' rule has been abrogated by *N.J.S.A.* 2A:62A–21.[1] We granted certification and now affirm.

---

[1] The applicable statutory provisions are actually *N.J.S.A.* 2A:62A–21 and –22. For ease of reference, they will be referred to as *N.J.S.A.* 2A:62A–21 in this opinion.

## I.

Plaintiff Harry Ruiz brought suit against defendants Angel Mero, Silvana's Bar and Restaurant, Richard Rossi, and Richard Rossi Real Estate Corporation (collectively "defendants") seeking damages as a result of injuries he sustained on defendants' premises.[2] At the time, Ruiz was a uniformed police officer for the City of Dover. While on duty, he was called to the scene of an altercation occurring at defendants' bar. Ruiz arrived to find that patrons had become agitated while consuming alcohol and watching a televised soccer match, and that an argument had been taken outside. One or more people attacked Ruiz, resulting in the head and neck injuries he sustained.

In his complaint, Ruiz asserted that defendants were negligent in failing to provide adequate security at the bar in contravention of a municipal ordinance. Defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted on the theory that the suit was barred by the firefighters' rule. Plaintiff countered that the Legislature abrogated the firefighters' rule when it enacted *N.J.S.A.* 2A:62A–21 in 1993. The trial judge adopted defendants' theory and granted dismissal.

After some procedural maneuvering that need not be recounted here, plaintiff appealed. In a published opinion, the Appellate Division reversed and remanded the case for trial based on *N.J.S.A.* 2A:62A–21. *Ruiz v. Mero,* 385 *N.J.Super.* 382, 388, 897 *A.*2d 407 (App.Div.2006). We granted defendants' petition for certification limited to the issue of the extent to which the firefighters' rule has been abrogated by *N.J.S.A.* 2A:62A–21. 188 *N.J.* 352, 907 *A.*2d 1012 (2006).

## II.

### A.

Deeply rooted in common law is the rescue doctrine, which provides a source of recovery to one who is injured while under-

---

2 Plaintiff's wife Sharon sued per quod.

taking the rescue of another who has negligently placed himself in peril. *See generally Wilson v. N. Pac. Ry. Co.*, 30 *N.D.* 456, 153 *N.W.* 429, 432 (1915) (holding plaintiff, who suffered permanent injuries attempting to fight fire started by defendant railroad, could recover from railroad); *Liming v. Ill. Cent. R.R. Co.*, 81 *Iowa* 246, 47 *N.W.* 66, 76–78 (1890) (holding plaintiff, who was injured while attempting to extinguish fire started by defendant, could recover); 6 Arthur Larson, *Larson's Workers' Compensation Law* § 110.08 (2006) (citing *Wagner v. Int'l Ry.*, 232 *N.Y.* 176, 133 *N.E.* 437, 438 (1921)). In *Wagner, supra,* Judge Cardozo, writing for the New York Court of Appeals, described the doctrine this way: "The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer." 133 *N.E.* at 437. Although "the wrongdoer may not have foreseen the coming of a deliverer . . . [h]e is accountable as if he had." *Id.* at 438; *see also* 3 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *The Law of Torts* § 14.15 at 331 (2d ed. 1986) ("[R]escuers are treated as if they were foreseeable, although to do so sometimes involves some stretch of the imagination.").

## B.

Over time, the firefighters' rule developed as an exception to the rescue doctrine. In its simplest form, the firefighters' rule operates to prevent a firefighter from recovering "in tort from a landowner or occupier who has been negligent in starting or failing to curtail a fire." 6 *Larson's, supra*, § 110.08. The firefighters' rule is an aspect of premises liability and was originally grounded in the distinction between an invitee and a licensee. *See Gibson v. Leonard*, 143 *Ill.* 182, 32 *N.E.* 182, 183–84 (1892). Because a firefighter was viewed as occupying the status of a licensee, it was held that the premises owner owed him no duty except to refrain from injuring him willfully or wantonly. *Ibid.* Later, the notion of assumption of risk was recognized as an underlying rationale for the doctrine. *See Zanghi v. Niagara Frontier Transp. Comm'n*, 85 *N.Y.*2d 423, 626 *N.Y.S.*2d 23, 649

*N.E.*2d 1167, 1171–72 (1995) (explaining rationale of rule); 6 *Larson's, supra,* § 110.08. Ultimately, what became the prevalent explanation for the rule was one of public policy: that it was unjust and unfair to compensate firefighters and police for injuries sustained when facing dangers they had been hired to confront. *Boyer v. Anchor Disposal,* 135 *N.J.* 86, 91–92, 638 *A.*2d 135 (1994); *Zanghi, supra,* 626 *N.Y.S.*2d 23, 649 *N.E.*2d at 1172. During the twentieth century, the firefighters' rule was adopted in one form or another in a majority of jurisdictions. *Boyer, supra,* 135 *N.J.* at 90, 638 *A.*2d 135.

## C.

In 1960, New Jersey adopted the firefighters' rule in *Krauth v. Geller,* in which we held that the owner of a house who called for fire aid was not liable to a firefighter who was injured when he fell at the owner's premises. 31 *N.J.* 270, 272–78, 157 *A.*2d 129 (1960). Noting the invitee–licensee distinction, Chief Justice Weintraub, writing for the Court, declared that the firefighter could not be classified as either because his entry did not depend upon permission or an invitation, nor could the owner deny him admittance. *Id.* at 272, 157 *A.*2d 129. Hence, the situation did not fit comfortably within traditional premises-liability concepts. *Ibid.* The Chief Justice went on to describe the rationale behind the adoption of the firefighters' rule as follows:

> The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon inquiry into what is fair and just.
>
> . . . .
>
> The rationale of the prevailing [firefighters'] rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to

charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.

[*Id.* at 273–74, 157 A.2d 129 (citations omitted).]

In other words, the rule is a reflection of "what courts perceived to be the consensus of the community about the way that risks of accidental injuries in public safety work were to be borne." *Boyer, supra,* 135 *N.J.* at 90, 638 *A.2d* 135. *Krauth, supra,* placed a limit on the rule, however, declaring that it would be appropriate to "impose liability upon the land occupier for negligence with respect to conditions creating undue risks of injury *beyond those inevitably involved in fire fighting.*" 31 *N.J.* at 274, 157 *A.2d* 129 (emphasis added).

The rule was later extended to include volunteer firefighters, *Ferraro v. Demetrakis,* 167 *N.J.Super.* 429, 433–34, 400 *A.2d* 1227 (App.Div.), *certif. denied,* 81 *N.J.* 290, 405 *A.2d* 834 (1979), and police officers, *Berko v. Freda,* 93 *N.J.* 81, 90–91, 459 *A.2d* 663 (1983). In *Berko, supra,* we barred a police officer's recovery for injuries sustained as a result of the negligent act that brought him to the premises, but, echoing the exception noted in *Krauth,* allowed claims for intentional wrongs, and for intervening, independent and subsequent acts of negligence. 93 *N.J.* at 90–91, 459 *A.2d* 663; *see also Mahoney v. Carus Chem. Co.,* 102 *N.J.* 564, 579, 510 *A.2d* 4 (1986) (holding immunity of firefighters' rule does not extend to party whose willful, wanton conduct created hazard causing injury).

In 1991, we revisited the firefighters' rule in *Rosa v. Dunkin' Donuts,* 122 *N.J.* 66, 583 *A.2d* 1129 (1991). There, a police officer responded to a call for emergency medical assistance at a commercial location. *Id.* at 68, 583 *A.2d* 1129. While helping a firefighter remove an unconscious person from the defendant's premises, the officer slipped on a white powder on the floor and later sued the property owner for his injuries. *Ibid.* The trial judge granted defendant's summary judgment motion based on the firefighters'

rule and the Appellate Division affirmed. *Id.* at 70, 583 *A*.2d 1129. We likewise affirmed the Appellate Division, concluding that the firefighters' rule bars actions not only for the very negligence that is the source of the emergency to which the firefighter or police officer responds, but also insulates any tangential negligent act "posing a hazard that is incidental to and inherent in the performance of the officer's duties." *Id.* at 76, 583 *A*.2d 1129. The effect of *Rosa* was to sweep away the *Krauth* exception that had allowed suits by first responders for injuries from hazardous conditions that were not inevitably or unavoidably involved in emergency response. *Rosa* explicitly immunized property owners from liability for such negligence. *Id.* at 76–77, 583 *A*.2d 1129.

In a dissent in *Rosa, supra,* Justice Handler reiterated his earlier call for a complete abolition of the firefighters' rule. 122 *N.J.* at 77, 583 *A*.2d 1129; *see also Mahoney, supra,* 102 *N.J.* at 587, 510 *A*.2d 4 (Handler, J., dissenting) (arguing for complete abrogation of firefighters' rule because based on unsound principles). In doing so, he stated:

> I strongly believe we should abrogate the [firefighters'] rule. The rule, as currently formulated, is obtuse and abstruse. It needlessly extends an immunity that has a dubious value. We have, except in the face of the most compelling countervailing reasons, eliminated and restricted common law immunities, *see, e.g., Weinberg v. Dinger,* 106 *N.J.* 469, 492–95 [524 *A*.2d 366] (1987) (public utility not immune from liability for resulting fire attributable to failure to maintain water pressure). I do not see how the beneficent purposes of the law would be undermined if claims based on such ordinary work-related negligence were to be addressed and resolved by the application of generally-understood and accepted tort principles. We would be better served if we were to invoke principles of duty and proximate cause, *e.g., Berko v. Freda, supra,* 93 *N.J.* at 93 [459 *A*.2d 663] (Handler, J., dissenting), which can be molded to special and often unique circumstances, *e.g., People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246 [495 *A*.2d 107] (1985). The creativity and flexibility of the [common law] surely can devise standards defining duty, proximate cause, and comparative negligence that suitably address all the circumstances that surround an officer [or firefighter] who must respond to an emergency on behalf of a private citizen. *E.g., Cella v. Interstate Properties,* 232 *N.J.Super.* 232 [556 *A*.2d 1262] (App.Div.1989).
>
> I thus continue to believe that "the distinction[s drawn by the Court] impede . . . the effectuation of a fundamental tenet of our jurisprudence that should apply to firefighters and policemen: the right to redress for those injured as a result of the wrongdoing of others." *Mahoney, supra,* 102 *N.J.* at 590–91 [510 *A*.2d 4] (Handler, J., dissenting).

[*Id.* at 85, 583 *A.*2d 1129.]

## D.

The firefighters' rule has come under criticism from other quarters as well. Indeed, some states have completely abandoned or severely limited its scope. David L. Strauss, Comment, *Where There's Smoke, There's the Firefighters' Rule: Containing the Conflagration After One Hundred Years,* 1992 *Wis. L.Rev.* 2031, 2032 n. 7 (1992); *e.g., Fla. Stat.* § 112.182 (1990) (abolishing firefighters' rule and deeming firefighters and law enforcement officials acting in scope of employment as invitees lawfully entering premises of another); *Minn.Stat.* § 604.06 (1984) (abrogating common-law doctrine known as firefighters' rule); *N.Y. Gen. Mun. Law* § 205–a (McKinney 1996) (providing additional right of action to injured firefighters); *N.Y. Gen. Oblig. Law* § 11–106 (McKinney 1996) (stating police officers or firefighters who suffer injuries caused by neglect, willful omission or intentional conduct, while in lawful discharge of duties, can seek recovery); *Wills v. Bath Excavating,* 829 *P.*2d 405, 409 (Colo.Ct.App.1991) (stating Colorado no longer follows firefighters' rule); *Christensen v. Murphy,* 296 *Or.* 610, 678 *P.*2d 1210, 1218 (1984) (holding firefighters' rule abolished).

The gravamen of the criticism is that the firefighters' rule does not comport with notions of redress and equal treatment underlying modern tort law. *See, e.g., Christensen, supra,* 678 *P.*2d at 1217–18 (rejecting theories underlying firefighters' rule as inconsistent with modern tort law); *Banyai v. Arruda,* 799 *P.*2d 441, 443 (Colo.Ct.App.1990) (finding firefighters' rule departure from general duty of care for safety of others). Also, questions have been raised regarding the assumption of risk rationale that was used to justify the doctrine. *See Banyai, supra,* 799 *P.*2d at 443 ("We do not view employment as a firefighter or police officer as legal acceptance of the negligence of others who expose the officer to injury in connection with an automobile accident. This is especially so when consideration is given to the fact that other

public employees, like citizens in general, remain entitled to assert their claims."). In fact, assumption of risk is no longer a defense in New Jersey. *See N.J.S.A.* 2A:15–5.2.

That is the backdrop for our inquiry.

### III.

In 1993, the Legislature enacted *N.J.S.A.* 2A:62A–21, which provides:

> In addition to any other right of action or recovery otherwise available under law, whenever any law enforcement officer, firefighter, or volunteer member of a duly incorporated first aid, emergency, ambulance or rescue squad association suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is *directly or indirectly the result of the neglect, willful omission, or willful or culpable conduct of any person or entity,* other than that law enforcement officer, firefighter, or first aid, emergency, ambulance or rescue squad member's employer or co-employee, the law enforcement officer, firefighter, or first aid, emergency, ambulance or rescue squad member suffering that injury or disease, or, in the case of death, a representative of that law enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad member's estate, may seek recovery and damages from the person or entity whose *neglect, willful omission, or willful or culpable conduct* resulted in that injury, disease or death.
>
> . . . .
>
> The rights, remedies and limitations accorded by the provisions of this act are hereby declared to be in addition to and cumulative of the rights, remedies and limitations accorded under law and nothing herein shall be construed to deny, abrogate or impair any such statutory right, remedy or prohibition.
>
> [*N.J.S.A.* 2A:62A–21 & –22 (emphasis added).]

It is the intent of that statutory language that is at issue here. The question presented is whether the Legislature meant, as plaintiff contends, to completely abrogate the firefighters' rule, or, as defendants claim, to return to the rule as it had existed prior to *Rosa.*

When called on to interpret a statute, the "overriding goal has consistently been to determine the Legislature's intent." *Young v. Schering Corp.,* 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995). When the language is clear, we rely on its plain meaning. *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002). However, the

spirit of the legislative direction prevails over the literal sense of the terms. *Young, supra,* 141 *N.J.* at 25, 660 *A.*2d 1153. Thus, we "try 'to make sense out of the legislation, so far as text and context may allow.' " *City of Clifton v. Zweir,* 36 *N.J.* 309, 323, 177 *A.*2d 545 (1962) (quoting Karl N. Llewellyn, *The Common Law Tradition: Deciding Appeals* 529 (1960)). When the language of a statute is ambiguous, we use extrinsic evidence as our polestar. *DiProspero v. Penn,* 183 *N.J.* 477, 492–93, 874 *A.*2d 1039 (2005) (stating extrinsic evidence includes "legislative history, committee reports, and contemporaneous construction").

To apply those principles, we turn again to the statutory language. The meaning of *N.J.S.A.* 2A:62A–21 seems clear—to provide a broad right of action to a first responder who is injured on the premises to which he has been called. It is broad because it encompasses all causes of action for both negligent and intentional acts, and it sweeps in injuries directly or indirectly resulting from those acts. No limits on the right of action are recognized except for those workers' compensation cases involving an employer or a co-employee.

Nevertheless, defendants argue that *N.J.S.A.* 2A:62A–21 should be read to maintain pre-*Rosa* immunity. That statute, however, is devoid of words to support that complex notion. There is simply nothing in the words used to suggest that the Legislature intended to immunize only those hazards inevitably involved in firefighting or police work and not those outside that sphere. Indeed, defendants do not even proffer a textual argument to support that position. Their only reference to language is their claim that the legislative synopsis appended to the bills that ultimately became *N.J.S.A.* 2A:62A–21 supports their interpretation. That synopsis states that the statute "[g]rants police officers, firefighters, emergency service personnel and their estates the right to seek recovery and damages for injury, disease and death in *certain cases.*"

*L.* 1993, *c.* 366 (eff. Jan. 5, 1994) (emphasis added).

According to defendants, the use of the term "certain cases" shows that the firefighters' rule was not fully vitiated and that a modicum of immunity was retained.  Even if the synopsis is considered relevant, defendants' reading of it is unavailing.  Indeed, the statements of the Assembly Judiciary, Law and Public Safety Committee and of the Senate Law and Public Safety Committee are instructive:

> *The rights afforded under this bill are, however, limited in one respect.*  The provisions of the bill do not authorize a law enforcement officer, firefighter, and first aid, emergency, ambulance or rescue squad member or a representative of his estate to seek recovery or damages from his employer or any co-worker.
>
> [Assemb. Judiciary, Law and Pub. Safety Comm., *Statement to Assembly Bill No. 1342*, at 1 (Aug. 24, 1992) (emphasis added); *see also* S. Law and Pub. Safety Comm., *Statement to Assembly Bill No. 1342*, at 1 (March 11, 1993) (stating that rights under bill are limited in one respect by not permitting injured person or representative right to seek recovery against "employer or co-worker").]

As those statements reveal, the law recognizes a single limitation for workers' compensation matters involving employers and co-employees, and thus the rights afforded by it do not apply in all, but only in "certain cases."  Indeed that is the limitation referred to in *N.J.S.A.* 2A:62A–22.

To be sure, as defendants argue, the temporal proximity between *Rosa* and the enactment of *N.J.S.A.* 2A:62A–21 suggests that the Legislature was aware of *Rosa* and was reacting to it when it passed the statute.  The following language from the senate committee statement supports that view: "Currently, the recovery rights of law enforcement officers, firefighters, and first aid, emergency, ambulance or rescue squad members suffering such injuries, diseases or deaths are limited to those rights and benefits authorized and available under the workers' compensation statutes."

> [S.  Comm., *Statement, supra*, at 1; *see also* Assemb. Comm., *Statement, supra*, at 1 (also stating that only suits against co-workers and employers will be barred).]

That language recognizes *Rosa's* elimination of the prior *Krauth* exception that had allowed claims against premises owners for tangential negligent acts not integral to a first responder's rescue operation.  Thus, it is fair to say that the statute was a response to *Rosa.*

However, that argument is of little succour to defendants because the decision in *Rosa* included not only the majority, but also the dissent of Justice Handler calling for the abolition of the firefighters' rule. Standing alone, then, the timing is no more supportive of defendants' position than of plaintiff's. However, when viewed on the backdrop of the unfettered language authorizing a cause of action for injury "directly or indirectly the result of the neglect, willful omission, or willful or culpable conduct" of the property owner, it seems much more likely that the Legislature intended to adopt Justice Handler's view than to re-establish pre-*Rosa* law. *N.J.S.A.* 2A:62A–21.

We acknowledge that an Appellate Division panel reached a different conclusion. *Kelly v. Ely,* 336 *N.J.Super.* 354, 361, 764 *A.*2d 1031 (App.Div.), *certif. denied,* 167 *N.J.* 635, 772 *A.*2d 937 (2001). That decision, however, is not persuasive because, among other reasons, it did not address the language of *N.J.S.A.* 2A:62A–21, but merely made policy arguments regarding the meaning that should be ascribed to it. *Id.* at 358–61, 764 *A.*2d 1031. Those policy judgments belong to the Legislature.

We note, as well, that every other appellate panel that has considered the issue has reached a conclusion opposite to that in *Kelly*—instead finding that in enacting *N.J.S.A.* 2A:62A–21, the Legislature intended to abrogate the firefighters' rule in its entirety.[3] *See Foster v. Newark Hous. Auth.,* 389 *N.J.Super.* 60, 64, 911 *A.*2d 82 (App.Div.2006) (holding that "*N.J.S.A.* 2A:62A–21 ... abrogated the [firefighters'] rule"); *James v. Arms Tech., Inc.,* 359 *N.J.Super.* 291, 326–27, 820 *A.*2d 27 (App.Div.2003) (noting firefighters' rule abrogated by *N.J.S.A.* 2A:62A–21); *Roma v.*

---

[3] We have never directly addressed the effect of the statute on the rule although in dictum in *Boyer, supra,* we stated: "[b]ecause the Legislature has, in effect, abolished the firefighters' rule in New Jersey, *L.* 1993, *c.* 366, this case is probably the last in which this Court will consider an application of the rule." 135 *N.J.* at 87–88, 638 *A.*2d 135. More recently, in *Berberian v. Lynn,* 179 *N.J.* 290, 299 & 303, 845 *A.*2d 122 (2004), we referenced the philosophy underlying the firefighters' rule in dictum without addressing the statute.

*United States,* 344 *F.*3d 352, 360 (3d Cir.2003) (stating that "plain and extremely broad language of the statute appears to have abolished the [firefighters'] rule by allowing a firefighter recovery for any injury that *directly or indirectly* is the result of the *neglect* of *any* person or entity" (internal quotations omitted)). We maintain the same view, and, to the extent that *Kelly* suggests otherwise, it is disapproved.

## IV.

The judgment of the Appellate Division is affirmed. The matter is remanded to the trial judge for proceedings consistent with the principles to which we have adverted.

*For affirmance and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.