SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Ann Samolyk v. Dorothy Berthe, III** (A-16-21) (085946)

**Argued February 1, 2022 -- Decided June 13, 2022**

**FUENTES, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers whether to expand the common law rescue doctrine to permit plaintiffs to recover damages for injuries sustained as a proximate result of attempting to rescue defendants' dog.

Plaintiff Ann Samolyk sustained neurological and cognitive injuries when she entered a lagoon in Forked River to rescue her neighbors' dog, which had fallen or jumped into the water. Samolyk's husband filed a civil action against defendants, alleging they were liable under the rescue doctrine by negligently allowing their dog to fall or jump into the water, prompting Samolyk to attempt to save the dog.

Neither the Law Division nor the Appellate Division found the doctrine applicable. The Court granted certification. 248 N.J. 518 (2021).

**HELD:** After reviewing the noble principles that infuse the public policy underpinning this cause of action, the Court declines to consider property, in whatever form, to be equally entitled to the unique value and protection bestowed on a human life. The Court nevertheless expands the rescue doctrine to include acts that appear to be intended to protect property but are in fact reasonable measures ultimately intended to protect a human life.

1. Under the rescue doctrine, "[t]he state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid." Wagner v. Int'l Ry. Co., 133 N.E. 437, 437-38 (N.Y. 1921). The doctrine has also been held to provide a source of recovery to one who is injured while undertaking the rescue of another who has negligently placed himself in peril. Thus, an actor is liable for harm sustained by a rescuer where the conduct of the actor has created a danger only to himself, if at the time of such conduct he should reasonably anticipate that others might attempt to rescue him from his self-created peril, and sustain harm in doing so. The Restatement (Second) of Torts and a majority of states have extended the rescue doctrine to efforts to save property. (pp. 6-11)

1

2.  The Court declines to expand the rescue doctrine to include injuries sustained to protect property, except in settings in which the plaintiff has acted to shield human life.  Notwithstanding the strong emotional attachment people may have to dogs, cats, and other domesticated animals, or the great significance some may attribute to family heirlooms, or works of art generally considered as irreplaceable parts of our cultural history, sound public policy cannot sanction expanding the rescue doctrine to imbue property with the same status and dignity uniquely conferred upon a human life.  The risk protected by the rescue doctrine is calibrated only by the reasonableness of the actions taken by the rescuer because all human life is equally precious.  The same calculation, considering the necessarily subjective attachments to property, would prove untenable.  (p. 12)

3.  The Court explains that certain preemptive acts that appear to be driven by the protection of property are, at their core, adjuncts to the protection of human life and thus may give rise to a cause of action under the rescue doctrine.  By contrast, the uncontested evidence here shows that Samolyk's actions were based solely on her perception of danger to the dog's life.  The complaint was properly dismissed because the decision to jump into the canal to save the dog's life does not give rise to a cognizable claim under the rescue doctrine.  (pp. 13-14)

     **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.**

Ann Samolyk and
John Samolyk,

Plaintiffs-Appellants,

v.

Dorothy Berthe, III,

Defendant,

and

Ilona Destefanis and
Robert Destefanis,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 1, 2022 | June 13, 2022 |

William D. Wright argued the cause for appellants (The Wright Law Firm, attorneys; William D. Wright and David T. Wright, on the briefs).

John Burke argued the cause for respondents (Burke & Potenza, attorneys; John Burke, of counsel and on the brief).

This appeal requires this Court to determine whether to expand the common law rescue doctrine to permit plaintiffs to recover damages for injuries sustained as a proximate result of attempting to rescue defendants' dog. After reviewing the noble principles that infuse the public policy underpinning this cause of action, we decline to consider property, in whatever form, to be equally entitled to the unique value and protection we bestow on a human life. We nevertheless expand the cognizable scope of the rescue doctrine to include acts that facially appear to be intended to protect property, but are in fact reasonable measures ultimately intended to protect a human life.

I.

This matter arises from injuries sustained by plaintiff Ann Samolyk while trying to rescue a dog owned by defendants Ilona and Robert DeStefanis. Ann's[1] husband, John Samolyk, filed a civil action against defendants, as Ann's guardian ad litem, alleging defendants were liable under the rescue doctrine by negligently allowing their dog to fall or jump into the canal that

---

[1] We refer to plaintiffs by their first names because they share the same last name. We do not intend any disrespect.

borders their property, prompting Ann to dive into the water to prevent the dog from drowning. The complaint also included a per quod claim by John seeking compensation for any loss or impairment of his spouse's services, society, and companionship due to injuries Ann sustained as a proximate result of defendants' negligence.

The parties are neighbors in Forked River, an unincorporated bayfront community within Lacey Township. Their homes are situated on a canal. In the evening of July 13, 2017, defendants' dog fell or jumped into the canal that snakes around the rear area of this shore community. Ann claimed she heard someone calling for help to rescue their dog that had fallen into the canal.[2] A report filed by a Lacey police officer describes the incident as "a report of a dog swimming in the lagoon." The report states that Ann "entered the lagoon to rescue the dog." The dog "was removed from the lagoon," without any apparent harm, by defendants' son and a family friend. Regrettably, Ann was found "unconscious on a floating dock." In response to defendants' interrogatories, plaintiffs allege Ann sustained neurological and cognitive injuries as a result of the incident.

---

[2] Although defendants dispute this part of the facts presented to the Law Division, we will accept them as accurate for the purpose of addressing the dispositive legal issue raised by the parties.

After joinder of issue and the parties' answers to interrogatories, as well as production of relevant documentary evidence, but before the parties took depositions, the Law Division judge assigned to manage the case directed the parties to file dispositive motions addressing whether plaintiffs raised a cognizable claim under the rescue doctrine.

Plaintiffs' counsel argued that defendants "invited the rescue because the dog was in peril, . . . [and Ann] would not [have] jump[ed] in the lagoon and [nearly] drown[ed] but for the dog being in there and people screaming about having to rescue the dog." In rebuttal, defense counsel noted that no court in this State had extended the rescue doctrine to apply to the protection of property. The Law Division judge agreed with defendants' position. The judge noted he was not empowered "to start defining what level of property is worth risking a human life."

The Appellate Division reached the same conclusion in an unpublished opinion, noting that "no reported case from any New Jersey court has applied the rescue doctrine to support a cause of action brought by the rescuer of real or personal property against a defendant who, through his negligence, placed the property in peril."

The Appellate Division's thoughtful opinion recognized, however, that the Restatement (Second) of Torts § 472 (Am. Law Inst. 1965) has extended

4

the rescue doctrine to the protection of property. Plaintiffs also relied on caselaw from our sister states tracking the Restatement's approach. Although the Appellate Division found that "[s]ome of that authority is persuasive and raises a legitimate question [as to] why the rescue doctrine should be limited to the rescue of another human being," it nevertheless declined to expand the scope of this common law doctrine in deference to its role as an intermediate appellate court.

This Court granted plaintiffs' petition for certification to determine whether the rescue doctrine extends to property, specifically here, a dog. 248 N.J. 518 (2021).

II.

The parties rely on the arguments they made before the Appellate Division. Plaintiffs urge this Court to rely on the Restatement, as the majority of our sister states have done, and extend the rescue doctrine to protect property. In response, defendants argue it is unclear whether a majority of states have extended the doctrine to protect property, and they emphasize that New Jersey courts have consistently applied the rescue doctrine to encourage voluntary exposure to danger only to protect human life.

III.

A.

This Court reviews the grant of a motion for summary judgment de novo, applying the same standard used by the trial court. Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c). The issue before us concerns the development of our state's common law, a responsibility exclusively entrusted to this Court. See DCPP v. J.R.-R., 248 N.J. 353, 373 (2021).

B.

The rescue doctrine is best described by quoting the words of Justice Benjamin N. Cardozo, then Judge of the New York Court of Appeals, in Wagner v. International Railway Co.:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The

6

state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid.

[133 N.E. 437, 437-38 (N.Y. 1921).]

The rescue doctrine established in Wagner was originally limited to situations "where three persons are involved, i.e., one party by his culpable act has placed another person in a position of imminent peril which invites a third person, the rescuing plaintiff, to come to his aid." See Provenzo v. Sam, 244 N.E.2d 26, 28 (N.Y. 1968). New York courts later expanded the rescue doctrine "to encompass a two-party situation where the culpable party has placed himself in a perilous position which invites rescue." Ibid.

The rescue doctrine "has long been a part of our State's social fabric." Saltsman v. Corazo, 317 N.J. Super. 237, 248 (App. Div. 1998) (quoting Burns v. Mkt. Transition Facility, 281 N.J. Super. 304, 310 (App. Div. 1995)). The doctrine has been applied "to situations where the rescuer . . . sues the rescued victim who is either completely, or partially, at fault for creating the peril that invited the rescue." Id. at 249. The Appellate Division has consistently applied the doctrine to cases where the rescuer is injured when trying to rescue another person. See id. at 247; Blackburn v. Broad St. Baptist Church, 305 N.J. Super. 541, 544-46 (App. Div. 1997); Tornatore v. Selective Ins. Co. of Am., 302 N.J. Super. 244, 252 (App. Div. 1997).

7

The first time this Court directly considered the rescue doctrine was in Ruiz v. Mero, a case in which we affirmed the Appellate Division's opinion, which held that the Legislature abrogated the "firefighters' rule"[3] when it adopted N.J.S.A. 2A:62A-21. 189 N.J. 525, 527 (2007). In Ruiz, a unanimous Court upheld the right of a police officer to rely on the rescue doctrine to sue "a commercial landowner for injuries he suffered when quelling a disturbance at the owner's bar." Ibid. In the course of explaining the statute's unambiguous conflict with the firefighters' rule, Justice Long noted the rescue doctrine was "[d]eeply rooted" in our state's common law and "provides a source of recovery to one who is injured while undertaking the rescue of another who has negligently placed himself in peril." Id. at 528-29.

In Estate of Desir v. Vertus, we reviewed the applicability of the rescue doctrine in the context of a "tragic shooting death of an individual by a criminal fleeing from a business." 214 N.J. 303, 308 (2013). The estate of the victim filed a civil action against the defendant based in part on the rescue doctrine. Ibid. We held the defendant did not negligently create the danger

---

[3] The firefighters' rule was a common law affirmative defense absolving the owner or occupier of land of liability "to a paid fireman for negligence with respect to the creation of a fire." Krauth v. Geller, 31 N.J. 270, 273 (1960).

8

that caused the decedent to come to his aid because the

> evolution of the rescue doctrine remains grounded upon essential tort concepts of duty and foreseeability. As the doctrine has been explained, an actor is liable for harm sustained by a rescuer "where the conduct of the actor has created a danger only to himself, if at the time of such conduct he should reasonably anticipate that others might attempt to rescue him from his self-created peril, and sustain harm in doing so."
>
> [Id. at 321 (quoting Restatement (Second) of Torts § 445 cmt. d).]

Those cases illustrate that, as the guardians of our state's common law, this Court has limited the application of the rescue doctrine to reflect the sound public policy Justice Cardozo eloquently described in Wagner.

## C.

In this appeal, we are asked to expand the scope of the rescue doctrine to include those who voluntarily choose to expose themselves to significant danger in an effort to safeguard the property of another. We decline to modify the rescue doctrine to incorporate such a far-reaching departure from the fundamental principles embedded in Wagner.

We acknowledge that the Restatement (Second) of Torts extends the rescue doctrine to property and provides that

> [i]t is not contributory negligence for a plaintiff to expose himself to danger in an effort to save himself or a third person, or the land or chattels of the plaintiff

9

> or a third person, from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.
>
> [§ 472 (emphasis added).]

See also Prosser & Keeton on Torts, § 44 (5th ed. 1984) (explaining that, "[a]lthough there has been some disagreement, the great majority of courts now apply the [rescue doctrine] to one who tries to rescue the property of another, even when under no duty to do so, and even though the property involved is that of the defendant").

The Second Restatement, however, acknowledges that "a plaintiff may run a greater risk to his own personal safety in a reasonable effort to save the life of a third person than he could run in order to save the animate or inanimate chattels of his neighbor or even of himself." § 472 cmt. a. Furthermore, the Restatement (Third) of Torts: Liability for Physical and Emotional Harm includes the extension to property, noting: "This Section is also applicable to a rescuer of imperiled property, whether that property is owned by another or by the rescuer." § 32, cmt. b (Am. Law Inst. 2010).

A majority of our sister states that have extended the rescue doctrine to cover property have done so in accord with the Restatement (Second) of Torts. See, e.g., Estate of Newton v. McNew, 698 P.2d 835, 837 (Colo. App. 1984) (holding that the doctrine is applicable to property after finding that a

"majority of states apply" the doctrine to "one who tries to rescue the property of another"); Neff v. Woodmen of the World Life Ins. Soc'y, 529 P.2d 294, 296 (N.M. Ct. App. 1974) (finding the doctrine applicable to property and noting that "[t]he majority of courts . . . have extended [the doctrine] to include situations where property is in danger of being severely damaged or destroyed"); Henjum v. Bok, 110 N.W.2d 461, 463 (Minn. 1961) (holding that the doctrine is applicable "where an attempt is being made to save human life or property").

Other jurisdictions have declined to expand the rescue doctrine to include the protection of property. For example, the Missouri Eastern District Court of Appeals held in Welch v. Hesston Corp. that, "[u]nlike a majority of other jurisdictions," it has consistently declined to extend the rescue doctrine to include the protection of property. 540 S.W.2d 127, 129 (Mo. Ct. App. 1976). The court explained that

> [t]he policy basis of the distinction in treatment of rescuers of persons and rescuers of property seems "to rest upon that high regard in which the law holds human life and limb; whereas, when mere property is involved, one may not voluntarily subject another to greater liability than that which he seeks to avert."
>
> [Id. at 129-30 (quoting Tayer v. York Ice Mach. Corp., 119 S.W.2d 240, 246 (Mo. 1937)).]

11

IV.

Against this analytical backdrop, we decline to expand the rescue doctrine to include injuries sustained to protect property, except in settings in which the plaintiff has acted to shield human life. We are convinced that any attempt to reform the application of the rescue doctrine to include the protection of property, whether animate or inanimate, realty or chattel, must emanate from our innate instinct to protect human life. Notwithstanding the strong emotional attachment people may have to dogs, cats, and other domesticated animals, or the great significance some may attribute to family heirlooms, or works of art generally considered as irreplaceable parts of our cultural history, sound public policy cannot sanction expanding the rescue doctrine to imbue property with the same status and dignity uniquely conferred upon a human life.

The words uttered by Justice Cardozo describe the contours of a cause of action that tolerates a concomitant degree of harm a plaintiff is reasonably willing to risk and, if necessary, endure to protect a human life. The risk factor is calibrated only by the reasonableness of the actions taken by the rescuer because all human life is equally precious. The same calculation, considering the necessarily subjective attachments to property, would prove untenable.

12

We are also aware, however, that certain preemptive acts that appear to be driven by the protection of property are, at their core, adjuncts to the protection of human life and thus may give rise to a cause of action under the rescue doctrine. For example, consider a neighbor who reports a fire in a nearby house to the proper authorities, then attempts to squelch the fire based on a reasonable, good faith belief that children or other vulnerable inhabitants may be in immediate danger, or because it appears likely the fire may spread to other occupied properties. Under those circumstances, if the fire was negligently started, the neighbor may have a cognizable basis to invoke the rescue doctrine to recover damages for injuries caused by the preemptive measures taken to limit the intensity of the fire, even if it is later determined there was no actual risk to human life because the house was unoccupied.

Following that line of reasoning, plaintiffs' cause of action would have survived a motion for summary judgment had she jumped into the canal after defendants' dog as a simultaneous reaction to seeing a child of tender years running after the animal and quickly approaching the edge of the dock. In that hypothetical situation, Ann's actions to protect the child from imminent danger by rescuing the dog may have been reasonable and could therefore have served as the basis for a cognizable cause of action under the rescue doctrine.

By contrast, the uncontested evidence here shows that Ann's actions were based solely on her perception of danger to the dog's life. These nuanced distinctions are intended to acknowledge and reaffirm the public policy underpinning the rescue doctrine in our state, to wit, the protection of human life. Thus, plaintiffs' complaint was properly dismissed because Ann's decision to jump into the canal to save the dog's life does not give rise to a cognizable claim under the rescue doctrine.

V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.

14